STATE OF CONNECTICUT *v.* LEO LABBE
(AC 19410)

Lavery, C. J., and Schaller and Cretella, Js.

Argued October 26, 2000—officially released January 30, 2001

*Robert P. Pickering,* special public defender, for the appellant (defendant).

*Jessica C. Torres-Daigle,* deputy assistant state's attorney, with whom, on the brief, were *Patricia A. Swords,* state's attorney, and *Elizabeth C. Leaming,* assistant state's attorney, for the appellee (state).

*Opinion*

CRETELLA, J. The defendant, Leo Labbe, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in violation of General Statutes § 53a-181 (a) (5).[1] The defendant claims that (1) the trial court improperly admitted subsequent uncharged misconduct testimony of two witnesses and (2) there was insufficient evidence of intent to support the conviction.[2] We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On November 27, 1996, the victim was traveling on Interstate 84 to Boston. After she entered a rest area,

---

[1] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (5) in a public place, uses abusive or obscene language or makes an obscene gesture . . . ."

[2] The state originally charged the defendant with public indecency in violation of General Statutes § 53a-186 (a) (2). The state subsequently charged the defendant with the additional crime of breach of the peace. As to the charge of public indecency, the jury was unable to render a verdict, and a mistrial was declared as to that charge alone. The state thereafter nolled that charge.

she noticed a man later identified as the defendant sitting in a motor vehicle to her right with his window down. After she returned to her automobile and started to back out of her parking space, she noticed the defendant lift himself from his seat and expose his penis. She observed that behavior through the open window of the defendant's car. The victim first wrote down the license plate number of the defendant's vehicle, then moved her car into another parking space directly in front of the rest stop building, went inside and contacted the state police. A state police trooper responded and took the victim's statement, including a description of the defendant.

On December 30, 1996, the trooper arranged an array of photographs for the victim to review. She recognized the photograph of the defendant and said that she was 70 percent certain that he was the person who had exposed himself to her at the rest stop on November 27, 1996.

I

The following additional facts and procedural history are necessary to resolve the defendant's claim that the court improperly admitted evidence of his subsequent misconduct through the testimony of two witnesses.

The first witness testified that on August 15, 1997, while traveling with a friend southbound on Interstate 91, she stopped at a rest area. She saw the defendant's vehicle parked in the lot. Because of the defendant's "grubby" look and her suspicions, she memorized the marker plate on the defendant's vehicle. The defendant subsequently followed her onto the highway and, through the open window of his vehicle, exposed himself to her in a manner similar to what had occurred during the November 27, 1996 incident. She reported the incident to the state police, and the defendant subsequently was arrested.

Prior to permitting the state to present the evidence of the 1997 incident to the jury, the state made a proffer of the evidence outside the presence of the jury. Following argument, the court allowed the testimony as uncharged misconduct, stating that the test for its admissibility was whether the probative value of such evidence to show a common scheme outweighs any prejudice to the defendant. The court found that the probative value outweighed the prejudicial effect and ruled that the evidence would be permitted. The court overruled the defendant's objection, admitted the evidence and gave the jury a limiting instruction. At that time, the state also informed the court that it would be offering the testimony of the trooper who had arrested the defendant after the second incident. The defendant made no objection at that time or when the trooper testified as to the identification of the defendant, his license, registration and other details of the incident.

The defendant argues that the victim's testimony and that of the trooper relating to subsequent uncharged misconduct was inadmissible. Although the defendant's objection to the admissibility of subsequent uncharged misconduct evidence preserved his challenge to the testimony of the first witness, the defendant did not object to the trooper's testimony. We decline to review the claim challenging the trooper's testimony, notwithstanding the defendant's claim that it should be reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. Practice Book § 60-5. The defendant failed to preserve that claim for appeal properly, and it involves an evidentiary and not a constitutional matter. It does not, therefore, satisfy the requirements for review under *Golding*. Further, it fails under the plain error doctrine because the trooper's testimony did not result in any manifest injustice. See Practice Book § 60-5.

Even if we were to conclude that the defendant's objection to the witnesses' testimony was considered to be a continuing objection to apply to the testimony of the trooper, thus preserving for our review the defendant's claim as to that testimony, we would still consider the evidence admissible under the criteria and analysis that is hereinafter set forth relating to the witnesses' testimony.

The defendant on appeal argues that the court improperly admitted into evidence the witnesses' testimony about the 1997 incident because of its highly prejudicial nature, and because it was too dissimilar from the 1996 incident to meet the requirements for admission under a theory of common scheme, plan or design, or identity or intent. He also argues that the evidence of the 1997 incident was inadmissible because it was subsequent uncharged misconduct rather than prior uncharged misconduct. We do not agree.

The defendant cites no case law or statute to support his assertion that subsequent uncharged misconduct is more prejudicial than prior uncharged misconduct. Our Supreme Court, however, has upheld the admission of subsequent misconduct by a defendant as relevant to the issue of identity. *State* v. *Smith*, 198 Conn. 147, 157, 502 A.2d 874 (1985). In *State* v. *Payne*, 219 Conn. 93, 102, 591 A.2d 1246 (1991), although the Supreme Court determined that evidence of a defendant's subsequent criminal activity was not relevant to prove identity and should not have been admitted at trial, that court made not distinction between *prior* uncharged misconduct and *subsequent* uncharged misconduct. Thus, as we determined in *State* v. *Lepri*, 56 Conn. App. 403, 409, 743 A.2d 626, cert. denied, 253 Conn. 902, 753 A.2d 938 (2000), "[t]he important factor . . . in admitting evidence of uncharged misconduct is its relevancy and prejudicial effect." In *Smith*, *Payne* and *Lepri*, no distinction was made between prejudice associated with

subsequent misconduct and prior misconduct. The test for admissibility is the prejudicial versus probative value of the evidence. Whether it was prior or subsequent misconduct has no bearing on its admissibility.

Evidence is admissible if such evidence outweighs its prejudicial impact and if it meets the requirements that the offense is (1) not too remote in time, (2) similar to the offense charged and (3) committed upon a person similar to the prosecuting witness. See *State* v. *Esposito*, 192 Conn. 166, 169–70, 471 A.2d 949 (1984). It is also relevant to note that our courts are "more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than in other crimes." *State* v. *Kulmac*, 230 Conn. 43, 62, 644 A.2d 887 (1994).

The August 15, 1997 and November 27, 1996 incidents certainly were not too remote in time, having occurred within months of each other. The acts also were sufficiently similar because they both involved the defendant's exposing himself in a similar manner from within his vehicle, through an open widow, to women whom he had initially located in rest areas along interstate highways in Connecticut. The court also noted that uncharged misconduct may be admitted to show intent. We agree. See *State* v. *Baldwin*, 224 Conn. 347, 355, 618 A.2d 513 (1993); see also *State* v. *Wild*, 43 Conn. App. 458, 464–65, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996).

Moreover, the court carefully considered the admissibility of the evidence. It conducted a full hearing outside of the presence of the jury. Its instructions to the jury were thorough in explaining the limited purpose for which the testimony should be used, and the jury was cautioned that the evidence should not be used to infer guilt, but solely to evaluate whether there was a common scheme or plan on the part of the defendant, or

for identity or intent. We conclude, therefore, that the court did not abuse its discretion in admitting evidence of the 1997 incident.

## II

The defendant next argues that the state did not prove beyond a reasonable doubt that he intentionally caused inconvenience, annoyance or alarm within the meaning of § 53a-181 (a) (5) by exposing himself to the victim. We disagree.

In viewing a claim of insufficient evidence, this court adheres to a clearly established two part analysis. First, the evidence must be construed in the light most favorable to sustaining the verdict and, second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. See *State* v. *Cobb*, 251 Conn. 285, 385, 743 A.2d 1 (1999). This court cannot substitute its judgment for that of the jury if there was sufficient evidence to support the jury's verdict. See *State* v. *Booth*, 250 Conn. 611, 655, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). Construing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence to sustain the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.