STATE OF CONNECTICUT *v.* MICHAEL J. BUNKER
(AC 23961)

Schaller, Flynn and DiPentima, Js.

Argued January 21—officially released June 14, 2005

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Adam B. Scott*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Michael J. Bunker, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics in violation of General Statutes § 21a-277 (a) and possession of narcotics in violation of General Statutes § 21a-279 (a), and, following his plea of nolo contendere, of having previously been convicted of sale of narcotics and possession of narcotics. On appeal, the defendant claims that the trial court improperly (1) denied his motion for disqualification of the judicial authority, (2) denied his motion to identify the informant and (3) permitted the state to introduce evidence of other misconduct. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The state alleged that the defendant sold cocaine to an undercover narcotics task force officer in Manchester on July 19, 2001. The state charged the defendant in a two part information. The first part charged the defen-

dant with the substantive offenses of sale of narcotics in violation of § 21a-277 (a) and possession of narcotics in violation of § 21a-279 (a). The second part charged the defendant with being a repeat offender for the purpose of sentencing and alleged that he previously had been convicted of having violated both § 21a-277 (a) and § 21a-279 (a). The second part of the information alleged that the prior conviction for the sale of narcotics occurred in 1996, that the prior conviction for possession of narcotics occurred in 1989 and that both convictions were obtained in the Superior Court, geographical area number nineteen, in the judicial district of Tolland. On May 13, 2002, the defendant entered a not guilty plea to the first part of the information and elected to be tried by the jury.

The defendant filed two motions that are relevant to his appeal. First, the defendant filed a motion for disqualification of the judicial authority. Second, the defendant filed a motion to identify the informant. After conducting hearings on the motions, the court denied each in turn.

On November 13, 2002, the jury found the defendant guilty of the charges in the first part of the information. Subsequently, the court accepted the defendant's nolo contendere plea to the charges contained in the second part of the information. On January 9, 2003, the court sentenced the defendant to a total effective term of imprisonment of thirty years, execution suspended after twenty years, and five years of probation.

The jury reasonably could have found the following facts. In January, 2001, a Vernon police officer notified James Graham, a detective with the Manchester police department assigned to a multijurisdictional narcotics task force, that an informant had provided information that an individual named "Mike" was selling cocaine in Vernon and Manchester, and would be at the Acadia

Restaurant in Manchester. Another member of the task force, Timothy Edwards, a sergeant in the South Windsor police department, was assigned to work undercover, to meet "Mike" at the restaurant and to attempt to purchase cocaine from him.

On July 19, 2001, Edwards drove an undercover car to the restaurant and immediately saw a person who matched the description that he had been given of Mike. The person was a white male in his late thirties who wore a T-shirt and a blue baseball cap. Edwards later identified that person as the defendant. Other officers were in the vicinity to monitor the situation and, although Edwards wore an audio transmitter for safety purposes, he was alone in his car. When Edwards approached and asked the defendant if he was "Mike," the defendant responded, "Yes." Edwards sat next to the defendant on a wall outside the restaurant until the defendant suggested that they take a ride. They both got into the undercover car, and Edwards drove away. The defendant told Edwards that he wanted to be dropped off at the Free Spirit Cafe in Vernon. On the way there, the defendant took crack cocaine from his sock and gave it to Edwards in exchange for $50. After Edwards drove the defendant to the Free Spirit Cafe, he returned to the Manchester police department and delivered the cocaine to another member of the task force. Later, when Edwards was shown an array of photographs, he selected the photograph of the defendant as the person named "Mike," who had sold him the cocaine. Edwards was the only person who observed the defendant in possession of narcotics on July 19, 2001. Additional facts will be set forth as necessary.

I

First, the defendant claims that the court improperly denied his motion for disqualification of the judicial authority. We disagree.

The following additional facts are relevant to the defendant's claim. In his motion for disqualification filed pursuant to Practice Book §§ 1-22[1] and 1-23,[2] the defendant requested, pursuant to canon 3 (c) of the Code of Judicial Conduct,[3] that the trial judge disqualify herself. The defendant attached an affidavit to his motion for disqualification setting forth the facts on which he relied. In the affidavit, the defendant attested that at the time of his prior drug convictions in 1989 and 1996, the judge had served in the judicial district of Tolland as a prosecutor with and as supervisor of the prosecutors there who handled the defendant's cases, and that those convictions formed the basis of the second part of the information alleging that he was a second offender. The defendant also attested that the judge, as a state's attorney, had represented the state at a probation modification proceeding in 1992 in which

[1] Practice Book § 1-22 (a) provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct . . . ."

[2] Practice Book § 1-23 provides in relevant part: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. . . ."

[3] Canon 3 (c), titled "Disqualification," provides in relevant part: "(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including, but not limited to instances where:

"(A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(B) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

"COMMENTARY: A lawyer in a governmental agency does not necessarily have an association with other lawyers employed by that agency within the meaning of this subparagraph; a judge formerly employed by a governmental agency, however, should disqualify himself or herself in a proceeding if his or her impartiality might reasonably be questioned because of such association. . . ."

she recommended an additional condition of probation for him. On that basis, the defendant argued that the judge had personal knowledge of evidentiary facts concerning the current proceeding by virtue of the prior prosecutions.

On November 5, 2002, the court, *Swords, J.*, conducted a hearing on the defendant's motion at which the defendant argued that pursuant to canon 3 (c), disqualification was necessary to avoid the appearance of partiality. The court denied the motion. Although Judge Swords acknowledged that she had been the supervisor in the office of the state's attorney in geographical area number nineteen when the defendant was convicted in 1989 and had been the state's attorney for the judicial district of Tolland when the defendant was convicted in 1996, she stated that there was no evidence that she had participated in either of the prosecutions. The judge stated that the only evidence of her involvement with the defendant was the transcript from the 1992 probation modification proceeding, attached to the defendant's motion, that resulted in an additional condition of probation to which he did not object. The judge stated that prior to learning of the defendant's motion, she was not aware of the defendant's prior drug convictions from the judicial district of Tolland, nor did she have any recollection of the probation modification proceeding.

The judge stated that she "has never been an attorney involved in the matter in controversy in this case which is the [first part of the] information . . . . [N]or has this court ever served with any attorney involved in the prosecution of [the first part of the information]. . . . The court finds that a reasonable person knowing all the circumstances would not conclude that merely because the trial court was a supervisor or an attorney in the same office that prosecuted the defendant, that the court could not be impartial in this matter."

The defendant claims that the court improperly denied his motion for disqualification of the judicial authority. Specifically, the defendant argues that pursuant to canon 3 (c), Judge Swords should have recused herself because her impartiality might reasonably be questioned as a result of having served as a supervisor in the state's attorney's office in geographical area number nineteen when he was convicted in 1989 and as head of the office of the state's attorney in the judicial district of Tolland when he was convicted in 1996—the same convictions that comprised the second part of the state's information. In addition, the defendant contends that the trial judge's impartiality might reasonably be questioned as a result of her role as prosecutor at a probation modification proceeding in 1992 when she recommended an additional condition of probation for him.

As a preliminary matter, we set forth the legal principles that govern our resolution of the defendant's claim and the applicable standard of review. Canon 3 (c) (1) "requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 460, 680 A.2d 147 (1996). "Even in the absence of actual bias, a judge must disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority." (Internal quotation marks omitted.) Id., 460–61.

The standard for determining whether a judge should recuse himself or herself pursuant to canon 3 (c) is well established. "The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Any conduct that would lead a reason-

able [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard. . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his [or her] . . . impartiality, on the basis of all of the circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Shabazz*, 246 Conn. 746, 768–69, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

"A factual basis is necessary to determine whether a reasonable person, knowing all of the circumstances, might reasonably question the trial judge's impartiality. . . . It is a fundamental principle that to demonstrate bias sufficient to support a claim of judicial disqualification, the due administration of justice requires that such a demonstration be based on more than opinion or conclusion." (Citation omitted; internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 50, 830 A.2d 240 (2003). "Vague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Montini*, 52 Conn. App. 682, 695, 730 A.2d 76, cert. denied, 249 Conn. 909, 733 A.2d 227 (1999); see also *State* v. *Shabazz*, supra, 246 Conn. 769–70 (mere speculation insufficient). In addition, it is clear that adverse rulings by the judge do not amount to evidence of bias sufficient to support a claim of judicial disqualification. See *Burton* v. *Mottolese*, 267 Conn. 1, 49, 835 A.2d 998 (2003),

cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

"The standard for appellate review of whether the facts require disqualification is whether the court's discretion has been abused. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Martin*, 77 Conn. App. 778, 786, 825 A.2d 835, cert. denied, 266 Conn. 906, 832 A.2d 73 (2003).

Neither this court nor our Supreme Court has addressed the issue of whether, pursuant to canon 3 (c), a trial judge formerly employed as a supervisory prosecutor is disqualified from presiding over the criminal proceeding of a defendant who was convicted previously for similar offenses in the same judicial district where the judge had served as state's attorney and during the same time period as the judge's tenure as supervisory state's attorney. Along with our Supreme Court, however, we have addressed whether canon 3 (c) requires disqualification in other factual contexts, which provides us with some guidance. Thus, a summary of the more relevant cases is germane to our discussion.

In *State* v. *Webb*, supra, 238 Conn. 460, our Supreme Court held that the trial court properly had denied a motion for disqualification pursuant to canon 3 (c) where the same trial judge had presided over the defendant's previous trial for a similar offense. Concluding that the situation did not raise a reasonable question about the judge's impartiality, our Supreme Court stated that other "[c]ourts have routinely held that the prior appearance of a party before a trial judge does not

reflect upon the judge's impartiality in a subsequent action involving that party." Id., 461.

In *State* v. *Martin*, supra, 77 Conn. App. 778, the defendant claimed that the court improperly denied his motion to recuse the trial judge who had represented one of the state's potential witnesses as a public defender four years earlier. Id., 783–85. This court considered "the practical realities of the very busy public defenders in urban geographical area courts [and] the fact that [the potential witness'] case had nothing to do with the defendant's case . . . ." Id., 787. We concluded that the facts of the case did not present a situation in which a reasonable person would question the judge's impartiality because the judge had no recollection of the potential witness, a considerable amount of time had elapsed since the judge, acting as a public defender, had represented him, and the potential witness did not testify. Id., 788, 790.

In *Bonelli* v. *Bonelli*, 214 Conn. 14, 570 A.2d 189 (1990), our Supreme Court held that there was no cause for disqualification where the trial judge, prior to his appointment to the bench, had been cocounsel in another matter with counsel for one of the parties. Id., 22. The Supreme Court looked to the "very limited"; id., 17; role the judge had played as cocounsel and the amount of time, fourteen months, that had elapsed since the association with cocounsel terminated.[4] Id., 17–18. Examining the totality of the circumstances, our Supreme Court reversed this court's decision requiring disqualification. Id., 22. While stating that extensive

[4] See also *Rowan Construction Corp.* v. *Hassane*, 17 Conn. App. 71, 75, 549 A.2d 1085 (1988) (no merit to plaintiff's claim that attorney trial referee should have disqualified himself on ground that he previously had represented client concerning purchase of real estate from plaintiff ten years earlier because representation was too remote in time to suggest real or apparent conflict of interest or any personal bias or prejudice against plaintiff), aff'd, 213 Conn. 337, 567 A.2d 1210 (1990).

business and professional relationships may require a different result, the court took into account "the realities of modern litigation" in refusing to place a burden on the judicial system "without justification." Id.

In *State* v. *Fitzgerald*, 257 Conn. 106, 777 A.2d 580 (2001), our Supreme Court reversed the judgment of this court and concluded that the prosecutor's improper disclosure of the part B information to the judge prior to trial did not require the reversal of the defendant's conviction. The court pointed out that "any claimed error that occurred by the prosecutor's disclosure of the part B information could have been remedied by requesting that the judge recuse himself before the trial began [by filing] a motion for judicial disqualification . . . ." Id., 116.

In *State* v. *D'Antonio*, 79 Conn. App. 683, 830 A.2d 1187, cert. granted on other grounds, 266 Conn. 930, 837 A.2d 803 (2003), this court concluded, pursuant to canon 3 (c), that "the existence of impartiality might reasonably be questioned . . . when a court presides over the violation of probation hearing after having participated actively in plea negotiations [with the defendant]." Id., 696. Although this court found that it was unlikely that the trial court recalled the nature of its previous involvement, this court held that it was plain error for the judge to fail to recuse himself from presiding over the hearing due to the well established procedure of assigning such cases to a second judge after the plea negotiations are unsuccessful. Id., 693–94.[5]

---

[5] See also *State* v. *Falcon*, 68 Conn. App. 884, 793 A.2d 274 (plain error for judge to fail to recuse himself where he had presided over defendant's trial, sentencing after having participated actively in pretrial plea negotiations with defendant two years earlier), cert. denied, 260 Conn. 924, 797 A.2d 521 (2002); but see *State* v. *Fullwood*, 194 Conn. 573, 484 A.2d 435 (1984) (defendant could not prevail on claim trial judge improperly denied defendant's motion requesting recusal pursuant to canon 3 [c] where judge participated in pretrial plea negotiations because defendant failed to provide record revealing contents of allegedly prejudicial negotiations).

A review of factually similar cases from other jurisdictions reveals widely differing outcomes depending on the jurisdiction and the specific factual circumstances. As the division of authority in this area suggests, there are competing interests at stake between preserving public confidence in the courts by ensuring an impartial and disinterested tribunal, and avoiding the impact on judicial administration that may result from frequent disqualifications. Although the statutory and procedural provisions relevant to disqualification differ slightly among the various jurisdictions, the following decisions are nonetheless helpful to our resolution of the issue because the courts applied provisions with language similar to that of canon 3 (c).

Courts uniformly hold that a judge is disqualified when he or she served as a prosecutor on the same case for which the defendant is being tried. See *United States* v. *Pepper & Potter, Inc.*, 677 F. Sup. 123, 126 (E.D.N.Y. 1988) (judge's prior involvement not merely pro forma and reasonably could give rise to appearance of impropriety); *Ex parte Sanders*, 659 So. 2d 1036, 1038 (Ala. Crim. App. 1995) (judge who served as district attorney when defendant's case files first delivered to district attorney's office for investigation required to recuse himself under canon 3 [c] [1]); *People* v. *Vasquez*, 307 Ill. App. 3d 670, 674, 718 N.E.2d 356 (1999) (judge actively participated as prosecutor in postconviction proceeding involving original prosecution of defendant, which reviewing court found to be "sufficiently related" to original prosecution, thereby requiring disqualification), leave to appeal denied, 187 Ill. 2d 589, 724 N.E.2d 1274 (2000); see also annot., Prior Representation or Activity as Prosecuting Attorney as Disqualifying Judge from Sitting or Acting in Criminal Case, 85 A.L.R.5th 471, § 6 (2001); R. Flamm, Judicial Disqualification (1996) § 11.5.2.

When, however, the judge merely had been with the prosecutor's office at the time of a prior, unrelated prosecution of the defendant, courts have held that the disqualification was *not usually* required. See *People v. Rosato*, 193 App. Div. 2d 1052, 1053, 599 N.Y.S.2d 195 (1993), leave to appeal denied, 84 N.Y.S.2d 910, 645 N.E.2d 1227 (1994); *People v. Jones*, 143 App. Div. 2d 465, 467, 532 N.Y.S.2d 586 (1988). That is true especially when the judge, as a former prosecutor, did not actually participate in the prior proceedings. See *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001) (actual participation required to trigger disqualification); *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995) (need actual participation before disqualification required under 28 U.S.C. § 455), cert. denied, 516 U.S. 1133, 116 S. Ct. 957, 133 L. Ed. 2d 880 (1996); see also *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988) (recusal not required absent specific showing judge involved in previous case), cert. denied sub nom. *Cohen v. United States*, 492 U.S. 906, 109 S. Ct. 3216, 106 L. Ed. 2d 566 (1989); *Kendrick v. Carlson*, 995 F.2d 1440, 1444 (8th Cir. 1993) (magistrate with no involvement in defendant's prior case when magistrate worked as assistant United States attorney not required to disqualify himself).

Even when the judge previously prosecuted the defendant in unrelated criminal proceedings, several courts have held that disqualification is not mandated. See *People v. Curkendall*, 12 App. Div. 3d 710, 714, 783 N.Y.S.2d 707, leave to appeal denied, 4 N.Y.3d 743, 843 N.E.2d 56 (2004); *People v. Alnutt*, 172 App. Div. 2d 1061, 1061, 569 N.Y.S.2d 317, leave to appeal denied, 78 N.Y.2d 1073, 583 N.E.2d 948 (1991); *Wise v. State*, 257 Ga. App. 211, 214, 570 S.E.2d 656 (2002); *Jenkins v. Bordenkircher*, 611 F.2d 162, 167 (6th Cir. 1979) (rejecting per se rule that judge may never preside at trial when, as prosecutor, he had previous contact with

defendant on totally unrelated criminal charges), cert. denied, 446 U.S. 943, 100 S. Ct. 2169, 64 L. Ed. 2d 798 (1980); see also annot., supra, 85 A.L.R.5th 471, § 7a. Other courts, however, have held that under some circumstances disqualification is required where the judge previously had prosecuted the defendant on unrelated charges. See *United States* v. *Zerilli,* 328 F. Sup. 706, 707–708 (C.D. Cal. 1971) (because of appearance of prejudice, judge disqualified from sitting on case involving defendant whom judge prosecuted on different charges in previous capacity as district attorney); *People* v. *Corelli,* 41 App. Div. 2d 939, 939, 343 N.Y.S.2d 555 (1973) (judge who prosecuted defendant while district attorney disqualified from sitting on criminal trial involving same defendant on different criminal charge); *People* v. *Smith,* 120 App. Div. 2d 753, 753–54, 503 N.Y.S.2d 72 (1986) (judge should have recused himself from presiding over trial for drug related charges when, on two prior occasions, he prosecuted defendant on similar charges); see also annot., supra, 85 A.L.R.5th 471, § 7b; R. Flamm, supra, § 11.5.1.

When the judge participated in a prior conviction that was used as a factor in enhancing the punishment for the present offense or for determining habitual offender status, most courts have held that disqualification was not necessary. See *People* v. *Jones,* supra, 143 App. Div. 2d 467; *Jordon* v. *State,* 274 Ark. 572, 575–76, 626 S.W.2d 947 (1982) (disqualification not mandated where trial judge previously prosecuted burglary defendant in prior felony prosecutions used to enhance punishment); *State* v. *Zamora,* 129 Idaho 817, 818, 933 P.2d 106 (1997) (disqualification not required where judge was prosecutor in prior felony case used as basis for habitual offender charge because charge was not continuation of prior felony case on which it was based, but was merely procedure for imposing additional punishment); *People* v. *Storms,* 155 Ill. 2d 498, 504–505, 617 N.E.2d

1188 (1993) (judge not required to recuse himself from sentencing phase following defendant's conviction for burglary where judge had served as assistant state's attorney during prior conviction for burglary that was basis for sentence enhancement because " 'matter in controversy' " was present burglary charge, not prior conviction); *Dishman* v. *State*, 525 N.E.2d 284, 285–86 (Ind. 1988) (disqualification not required although judge had been prosecuting attorney in two cases on which habitual offender charge based, in part because there was no contesting prior convictions so determination of habitual criminal status was virtually foregone conclusion); see also annot., supra, 85 A.L.R.5th 471, § 7d.

In contrast, however, other courts have held that disqualification *is* warranted when the judge previously participated in the prosecution of an unrelated criminal proceeding that was used as a factor in enhancing the punishment for the present offense or for determining habitual offender status. See *People* v. *Smith*, 59 App. Div. 2d 618, 618, 398 N.Y.S.2d 2 (1977) (ordering de novo second offender hearing, resentencing before another judge when predicate offense for second offender determination had been prosecuted by presiding judge); *Crawford* v. *State*, 686 So. 2d 199, 203 (Ala. Crim. App. 1996) (judge's recusal required because impartiality reasonably could have been questioned in part because defendant's prior convictions used to enhance sentence as habitual offender were prosecuted under judge's supervision as district attorney); *Goines* v. *State*, 708 So. 2d 656, 659–60 (Fla. App. 1998) (standard of whether prudent defendant would have reasonable fear he might not receive fair trial or sentence warranted reversal of conviction, remand for new trial before different judge when judge, six years earlier, prosecuted defendant on similar drug offenses and when judge, in determining defendant's habitual offender status, would be consid-

ering convictions he helped obtain); see also annot., supra, 85 A.L.R.5th 471, § 7c.

In this case, as the factual basis for his claim of judicial disqualification, the defendant refers to Judge Swords' role as (1) prosecutor in his 1992 probation modification proceeding and (2) supervisor of the office of the state's attorney at the time of his prior convictions that formed the basis of the second part of the state's information. We address each in turn.

Judge Swords' participation in the defendant's probation modification proceeding was unrelated to both parts of the state's information. The proceeding took place in 1992, approximately ten years prior to the defendant's trial in this case. Judge Swords performed a limited function, merely recommending a modification of the defendant's probation on a prior unrelated conviction. In considering the practical realities of prosecutors in busy geographical area courts and the considerable amount of time that had elapsed since the prior proceeding, we conclude that Judge Swords' impartiality cannot reasonably be questioned on the basis of her role as prosecutor in the probation modification proceeding. See *State* v. *Martin*, supra, 77 Conn. App. 787.

Although Judge Swords served as supervisor of the office of the state's attorney at the time of the defendant's prior convictions, which formed the basis of the second part of the state's information, there is nothing in the record to indicate that she had any direct involvement in either prosecution. Absent such a showing, we conclude that the defendant has failed to demonstrate a factual basis sufficient to support his claim of judicial disqualification on the basis of the judge's former role as a supervisory prosecutor. See *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, supra, 79 Conn. App. 50. In addition, we consider it

significant that a prior conviction that forms the basis of the second part of the information is *not* a continuation of the prior underlying prosecutions. Rather, proving the existence of the prior conviction merely provides evidentiary support for establishing that the defendant is a second offender of the substantive charge in the first part of the information, which permits an enhanced sentence. After examining the totality of the circumstances, including the amount of time that had elapsed and the limited nature of the involvement, we conclude that Judge Swords' impartiality cannot reasonably be questioned on the basis of her role as supervisory prosecutor at the time of the defendant's prior convictions.[6] See *Bonelli* v. *Bonelli*, supra, 214 Conn. 17–18.

Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion for judicial disqualification because an objective person knowing all the circumstances would not be led to the conclusion that Judge Swords' impartiality reasonably might be questioned.

## II

Next, the defendant claims that the court improperly denied his motion to identify the informant. Specifically, the defendant argues that disclosure of the informant's identity was essential to the defense of entrapment and, therefore, the state's privilege to withhold disclosure should have given way. We disagree.

---

[6] See R. Flamm, supra, § 11.5.2 ("A motion for disqualification on the basis of a judge's prior prosecutorial activity is particularly likely to be denied where the judge's role in the prosecution was merely a supervisory one, or where the judge, as prosecutor, performed only a limited function. . . . A fortiori, judicial disqualification is not necessarily mandated in those circumstances in which the matter with which the challenged judge was previously involved as prosecutor resulted in a prior conviction that is merely being used to enhance the punishment for a current offense.").

The following additional facts are relevant to the defendant's claim. In the affidavit portion of the arrest warrant application dated October 11, 2001, Graham swore that on July 19, 2001, "arrangements were made by confidential informant . . . for [the defendant] to meet with [Edwards at] the Acadia Restaurant." The affidavit also described the subsequent drug transaction conducted between the defendant and Edwards on July 19, 2001.

At the hearing on the defendant's motion to disclose the identity of the informant, the state claimed privilege on the ground that the informant had been promised anonymity and would be in danger if identified. The state argued that disclosure was not warranted because the informant had not been a witness to the drug sale. The defendant argued that identification of the informant and disclosure of the contents of the relevant communications were essential to his defense because the informant had been the sole party responsible for arranging the alleged transaction and connection between the defendant and members of the narcotics task force. The defendant also argued that the confidential informant was the only witness who could provide testimony regarding the conversation that took place between the defendant and the informant that led to the meeting with the task force officer. The defendant contended that failure to disclose the identity of the informant would eliminate his ability to cross-examine the informant regarding possible mistaken identity and an entrapment defense on the basis of "possible coercion" and "possible threats." The defendant also contended that disclosure was warranted because the informant had been more than a mere tipster; rather, the defendant claimed, the informant was a material witness to the transaction because the informant had set up the meeting and was the only person who had

communicated with the defendant prior to the alleged drug sale.

The court denied the defendant's motion. The court stated that once the state invoked the privilege of protecting the identity of the informant, the defendant bore the burden to show that disclosure was essential to his defense. As to the mistaken identity issue, the court concluded that the defendant had not met that burden because he made no showing that the informant had witnessed the alleged drug transaction between the defendant and the undercover police officer and, thus, the informant would not be able to testify as to whether the defendant was the person who possessed the cocaine and sold it to the officer. As to the entrapment defense, the court concluded that it was premised on nothing but speculation and that the defendant failed to meet his burden because he had presented no facts or offer of proof to show that the informant would be likely to provide evidence that the defendant was coerced or entrapped.

On cross-examination, Graham testified that the task force knew the defendant would be present at the Acadia Restaurant on July 19, 2001, because an informant had notified them. When asked to disclose the identity of the informant, Graham identified the informant by his confidential informant number. When the defendant asked Graham to disclose the informant's name, the court sustained the state's objection.

During closing argument, defense counsel reviewed testimony showing that the officers knew that someone would be at the Acadia Restaurant with drugs to sell because they had received the information from an informant. The defendant's counsel asserted that the unidentified informant had set up the whole drug transaction, but was not made available to testify and that, as a result, there was no evidence regarding the number

of telephone calls between the informant and the person who sold the drugs, the nature of their relationship or whether the informant had threatened the defendant.

In its jury charge, the court informed the jury that it had ruled that the state was not required to disclose the identity of the confidential informant because the state's interests in protecting the identity of the informant outweighed the defendant's need to know the informant's identity in order to present his defense properly. The court instructed the jurors that they were not to draw any inferences in favor of either party regarding the fact that the informant remained unidentified and did not testify as a witness.

As a preliminary matter, we set forth the legal principles that govern our resolution of the defendant's claim. "In *Roviaro* v. *United States* [353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)], the United States Supreme Court had occasion to define the nature and scope of the informant's privilege. What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons *who furnish information of violations of law to officers charged with enforcement of that law.* . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens *to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.* . . .

"*Roviaro* established a test for assessing challenges to the applicability of the informant's privilege. This test involves the balancing of two competing interests: (1) the preservation of the underlying purpose of the privilege; and (2) the fundamental requirements of fairness. . . . The underlying purpose of the privilege is

to protect the public interest in the flow of information to law enforcement officials. The fundamental requirements of fairness comprise the defendant's right to a fair trial, including the right to obtain information relevant and helpful to a defense. . . . Whether [disclosure is warranted depends] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Jackson*, 239 Conn. 629, 632–33, 687 A.2d 485 (1997).

"Once the state has invoked the privilege, it is then the defendant's burden to show that the balance of the evidence falls in favor of disclosure." Id., 636. When the defendant demonstrates that disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense, or is essential to a fair determination of a cause, the government's privilege must yield. *State* v. *Hernandez*, 254 Conn. 659, 666–67, 759 A.2d 79 (2000). "Disclosure is essential to the defense where nondisclosure could hamper the defendant's right to a fair trial, such as where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." (Internal quotation marks omitted.) *State* v. *Jackson*, supra, 239 Conn. 636–37. Specific defenses that *may* merit disclosure include entrapment, mistaken identity and lack of knowledge. *State* v. *Hernandez*, supra, 669. "Mere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure . . . . Before a court will compel disclosure, the informant typically must be a participant in the alleged crime or an eyewitness thereto." (Citation omitted; internal quotation marks omitted.) *State* v. *Hunt*, 72 Conn. App.

875, 883, 806 A.2d 1084, cert. denied, 262 Conn. 920, 812 A.2d 863 (2002).

We also identify the applicable standard by which an appellate court reviews the propriety of a trial court's decision on whether to order disclosure of a confidential informant. "It is a basic tenet of our jurisprudence that we afford deference to the trial court and assess the trial court's conclusions pursuant to an abuse of discretion standard. . . . [T]he determination of whether an informer's identity shall be revealed is reviewed as a matter involving the exercise of discretion by the court. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action." (Internal quotation marks omitted.) Id., 880–81.

In this case, the defendant argues that disclosure of the identity of the confidential informant was essential to establishing the defense of entrapment.[7] The informant was neither a participant in the alleged crimes of possession and sale of cocaine, nor an eyewitness to those crimes. The informant made arrangements for the defendant to meet Edwards at the Acadia Restaurant on July 19, 2001. We have held that when an informant "played a critical role in arranging the undercover drug deal"; State v. Lee, 30 Conn. App. 470, 481, 620 A.2d 1303 (1993), aff'd, 229 Conn. 60, 640 A.2d 553 (1994); disclosure may be warranted even when the informant did not otherwise participate in or witness the crime. Id., 480–81.

---

[7] At the hearing, the defendant also argued that disclosure also was essential to establishing the defense of mistaken identity. The informant, however, was not present during the drug transaction and thus would not have been able to testify as to whether the defendant was the person who possessed the cocaine and sold it to the officer. In other words, the informant was not an actual participant in the crimes of possession and sale of cocaine, nor was the informant an eyewitness to those crimes. Thus, disclosure on this basis was not justified. See State v. Hunt, supra, 72 Conn. App. 883.

Here, the informant's testimony likely would reveal the contents of the communication that resulted in the defendant meeting with Edwards. Although evidence of coercion would have been relevant and helpful to establishing the defense of entrapment, the defendant's offer of proof included only vague assertions about "possible coercion" and "possible threats" that may have been revealed by the informant's testimony. This case is distinguishable from *State* v. *Lee*, supra, 30 Conn. App. 470, in which the defendant's offer of proof was not the product of sheer speculation, but rather contained specific evidence in support of the entrapment theory. Id., 481. In addition, the defendant in *Lee* testified regarding multiple telephone calls in which the informant repeatedly urged her to effectuate a drug deal and also testified as to the circumstances that led her to agree to participate, which indicated the lack of predisposition that is an essential element of the entrapment defense. Id., 478–79. In the present case, the defendant's offer of proof did not contain such evidence. Mere speculation that the informant might have provided testimony relevant to the entrapment defense is insufficient to mandate disclosure of the identity of a confidential informant. See *State* v. *Hunt*, supra, 72 Conn. App. 883. Accordingly, we conclude that the court did not abuse its discretion when it determined that the defendant had not met his burden of showing that disclosure was justified.

### III

Finally, the defendant claims that the court improperly permitted the state to introduce evidence of other misconduct. Specifically, the defendant argues that evidence regarding a subsequent drug sale should not have been admitted because its prejudicial effect outweighed its probative value. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. After Edwards testi-

fied regarding the July 19, 2001 drug sale, the state asked that the jury be excused and stated its intention to question Edwards regarding a second drug sale that occurred on August 27, 2001. Edwards then testified regarding the second drug sale outside the presence of the jury. The state argued that the evidence was admissible for the purpose of showing intent, knowledge and common plan or scheme. The defendant objected to the introduction of the evidence on the ground that its prejudicial effect outweighed its probative value.

The court ruled that evidence of the subsequent misconduct was admissible because it was highly probative on the issues of whether the defendant knowingly sold a narcotic substance to an undercover officer and knowingly possessed a narcotic substance. The court concluded that the evidence also was probative of whether the defendant had engaged in a system of criminal activity, but it was *not* probative on the issue of identity because the subsequent conduct evidence was not so similar as to rise to the level of a signature crime or a unique modus operandi. The court determined that the evidence was highly probative because of its similarity to the other evidence in that both sales were initiated at a bar, involved similar amounts of cocaine and occurred close in time. The court also determined that the evidence would result in minimal prejudice to the defendant because it was not inflammatory and would not unduly arouse the jury's emotions.

On the basis of Edwards' testimony regarding the second drug sale, the jury could have found the following facts. On August 27, 2001, Edwards called the defendant on his cellular telephone and made arrangements to meet him between 7 p.m. and 7:30 p.m. in Vernon at the Free Spirit Cafe so that Edwards could purchase $50 worth of crack cocaine. Edwards agreed to pay for a taxicab to transport the defendant after the defendant

told Edwards that he could not meet because he did not have transportation. As they had arranged, Edwards telephoned the defendant at 7 p.m., and the defendant told him that he was at the bar. When Edwards arrived in his undercover car, he telephoned the defendant again, and the defendant came out of the bar, got in the car and suggested they take a ride. While driving in Vernon, the defendant took crack cocaine from his sock and gave it to Edwards, who handed him $90— $50 for the cocaine and $40 for the taxicab fare. The defendant told Edwards that he could also get powder cocaine, and then took some from his sock and showed it to Edwards. The defendant then asked Edwards to drive him to an exotic dance club in Vernon known as Kahoots. After driving the defendant to that location, Edwards turned the evidence over to another member of the task force.

At the conclusion of the state's examination of Edwards, the court gave the jury a limiting instruction regarding the evidence of the second drug sale. The court instructed the jury that the subsequent misconduct evidence was "not being admitted to prove [the defendant's] bad character or his tendency to commit a criminal act." Rather, the court instructed, the evidence was being admitted for the purpose of showing that on July 19, 2001, the defendant knowingly sold a narcotic substance and was engaged in a system of criminal activity. The court further instructed the jury not to consider the subsequent misconduct evidence as establishing the defendant's predisposition to commit any of the crimes charged or to demonstrate criminal propensity. The court also gave similar instructions in its final charge to the jury.

The principles governing the admissibility of other misconduct by a defendant are codified in § 4-5 (a) and (b) of the Connecticut Code of Evidence. "Evidence of other crimes, wrongs or acts of a person is inadmissible

to prove the bad character or criminal tendencies of that person." Id., § 4-5 (a). "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Id., § 4-5 (b). If the evidence of other misconduct is relevant to a proper purpose, such evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ." Id., § 4-3. Evidence of uncharged misconduct, therefore, is not per se inadmissible. "We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect."[8] (Internal quotation marks omitted.) *State* v. *Aaron L.*, 272 Conn. 798, 820, 865 A.2d 1135 (2005).

In other words, "[t]he test for admissibility [of uncharged misconduct] is the prejudicial versus probative value of the evidence. *Whether it was prior or subsequent misconduct has no bearing on its admissibility.*" (Emphasis added.) *State* v. *Labbe*, 61 Conn. App. 490, 495, 767 A.2d 124, cert. denied, 256 Conn. 914, 773 A.2d 945 (2001); see also *State* v. *Sawyer*, 74 Conn. App. 743, 749 n.13, 813 A.2d 1073 (whether evidence of other misconduct occurred prior to or subsequent to crimes with which defendant charged had no bearing on admis-

---

[8] "Evidence is material where it is offered to prove a fact directly in issue or a fact probative of a matter in issue. C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.1.3. Relevant evidence is defined in the Connecticut Code of Evidence, § 4.1, as evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *State* v. *Gibson*, 75 Conn. App. 103, 110, 815 A.2d 172 (2003), rev'd in part, 270 Conn. 55, 850 A.2d 1040 (2004).

sibility), cert. granted on other grounds, 263 Conn. 908, 819 A.2d 842 (2003); *State* v. *Lepri*, 56 Conn. App. 403, 409, 743 A.2d 626 (rejecting claim that court improperly admitted subsequent misconduct evidence), cert. denied, 253 Conn. 902, 753 A.2d 938 (2000). "[I]n Connecticut, as in almost all other jurisdictions, [e]vidence of crimes subsequent to the crime charged are also admissible for the same purposes as those committed prior to the charge." (Internal quotation marks omitted.) *State* v. *Sawyer*, supra, 749 n.13; see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.19.2, p. 233.

"Our standard of review on such matters is well established. The admission of evidence of [other] misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . The problem is . . . one of balancing the actual relevancy of the other crimes evidence in light of the issues and other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 333, 864 A.2d 666 (2004).

As discussed, the defendant in this case was charged with sale of cocaine in violation of § 21a-277 (a) and possession of cocaine in violation of § 21a-279 (a). "[T]o prove possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence and exercised dominion and control over it." (Internal quotation marks omitted.) *State* v. *Waden*, 84 Conn. App. 147, 152, 852 A.2d 817, cert. denied, 271 Conn. 916, 859 A.2d 574 (2004). Therefore, evidence regarding the second drug sale was relevant because it tended to prove that the defendant had knowledge that the sub-

stance he possessed on July 19, 2001, was a narcotic and that he intended to exercise dominion and control over it.

In addition, the subsequent misconduct was relevant to establishing that the defendant possessed the cocaine with the intent to sell it to Edwards on July 19, 2001. In *State* v. *Amaral*, 179 Conn. 239, 425 A.2d 1293 (1979), our Supreme Court stated: "Under a charge of possession with intent to sell, the fact that in the past the defendant had been a seller of the drug would tend to characterize the nature of his possession of the drug at the time of the alleged offense." Id., 244–45. Thus, evidence regarding the subsequent drug sale also was relevant to establishing the defendant's intent at the time of the prior sale. "Because intent is almost always proved, if at all, by circumstantial evidence, [other] misconduct evidence, where available, is often relied upon." *State* v. *Baldwin*, 224 Conn. 347, 355, 618 A.2d 513 (1993).

The subsequent misconduct evidence also was relevant to prove that the defendant was engaged in a system of criminal activity. See Conn. Code Evid. § 4-5 (b). It was probative because it was strikingly similar to the evidence regarding the charged offenses. On both occasions, the defendant arrived at a prearranged rendezvous point—either a bar or a restaurant—after being summoned by telephone, met Edwards at the prearranged rendezvous point, conducted the drug transaction while the parties rode in Edwards' undercover car, removed the cocaine from his sock, sold Edwards a similar quantity of cocaine and requested that Edwards drive him to a different location. When evidence of other misconduct is remarkably similar to the evidence regarding the charged offenses, its probative value is heightened. See *State* v. *Baldwin*, supra, 224 Conn. 355.

Having determined that Edwards' testimony regarding the second drug sale was relevant and material, we

now must address the court's determination that the probative value of the evidence outweighed its prejudicial effect. "The primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Fernandez*, 76 Conn. App. 183, 189, 818 A.2d 877, cert. denied, 264 Conn. 901, 823 A.2d 1220 (2003). "Prejudicial evidence is evidence that tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence . . . but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The problem is thus one of balancing the actual relevancy of the other [misconduct] evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Gibson*, 75 Conn. App. 103, 111–12, 815 A.2d 172 (2003), rev'd in part, 270 Conn. 55, 850 A.2d 1040 (2004).

Edwards' testimony regarding the defendant's subsequent misconduct is not the type of evidence that would "improperly arouse the emotions of the jury." (Internal quotation marks omitted.) Id., 111. "A trial court's admission of evidence that a defendant [subsequently] engaged in drug related activity is not necessarily prejudicial." (Internal quotation marks omitted.) *State* v. *Fernandez*, supra, 76 Conn. App. 189–90. Although some prejudice naturally flows from such evidence, the evidence regarding the second drug sale was not the type of evidence that would shock the jury or inflame its

passions. See *State* v. *Holliday*, 85 Conn. App. 242, 250, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004).

Furthermore, whatever undue prejudice that may have existed was mitigated by the court's detailed instructions to the jury. The court issued a limiting instruction after Edwards testified and, in its final charge, instructed the jury that the evidence was not being admitted to prove the defendant's bad character or his propensity to commit criminal acts. "Such a limiting instruction serves to minimize any possible prejudice . . . ." (Citations omitted.) *State* v. *Lopez*, 14 Conn. App. 536, 539, 541 A.2d 902 (1988). "It is well settled that the jury is presumed to follow the court's instructions." *State* v. *Tate*, 85 Conn. App. 365, 383, 857 A.2d 394, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). Accordingly, we conclude that the court did not abuse its discretion in permitting the state to introduce evidence of the defendant's subsequent misconduct.

The judgment is affirmed.

In this opinion the other judges concurred.