RICHARD J. BONELLI *v.* SANDRA A. BONELLI
(13716)

PETERS, C. J., SHEA, CALLAHAN, GLASS and SANTANIELLO, Js.

Argued November 7, 1989—decision released February 20, 1990

*C. Michael Budlong,* with whom was *Terence S. Ward,* for the appellant (plaintiff).

*M. Jane Christensen,* with whom was *Ruth H. Mantak,* for the appellee (defendant).

SANTANIELLO, J. This is an appeal from the judgment of the Appellate Court setting aside the judgment of the trial court in a dissolution action on the ground that the "undisputed facts on the record [were] sufficient to require the disqualification of the judge . . . ." *Bonelli* v. *Bonelli,* 18 Conn. App. 207, 209, 557 A.2d 559 (1989). On May 25, 1989, we granted the plaintiff's petition for certification to determine whether the Appellate Court had erred in its conclusion. We reverse.

The underlying procedural and factual background is as follows. A judgment was rendered in a dissolution action between the parties by the trial court, *Kaplan, J.,* on January 30, 1987. Approximately two months later, the defendant moved to open the judgment and to disqualify Judge Kaplan, alleging that the defendant's counsel had recently become aware that the plaintiff's attorney and the judge had been co-counsel in a wrongful death action from January, 1984, until his appointment to the bench in November, 1985. The motion further alleged that a dispute over legal fees in the wrongful death action remained pending and that the judge's successor law firm retained a financial interest in the outcome of that dispute.

The judge denied the defendant's motion, acknowledging the facts contained therein, but finding that the

allegations were legally insufficient to require disqualification. The defendant subsequently filed a motion for an evidentiary hearing, which was denied by the court, *Barall, J.,* on the ground that an evidentiary hearing is not required when there are no facts in dispute.

The defendant raised four issues on appeal.[1] The Appellate Court ruled only on the motion for disqualification, holding that "[a]lthough no single fact in this case requires disqualification, we conclude from the totality of circumstances, and the facts as established on the record, that disqualification was required . . . . " *Bonelli* v. *Bonelli,* supra, 211. We disagree.

The judge's former law firm and the plaintiff's attorney were cocounsel in a wrongful death action, *Nesko* v. *Graves,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-82-269220 (November 19, 1986). The *Nesko* plaintiff retained the law firm of Lavitt, Hutchinson and Kaplan to represent her on June 10, 1982. While he was an attorney, Judge Kaplan's involvement with the case was confined to an introductory meeting with the *Nesko* plaintiff, writing a letter discharging the attorneys[2] who previously had served as counsel and making arrangements for disposition of fees upon the conclusion of the case. A member of Judge Kaplan's former law firm entered an appearance in the case a few days later. The plaintiff's attorney entered an appearance as cocounsel in the *Nesko* action on January 27, 1984.[3] The cocounsel

---

[1] The defendant claimed that the trial court erred in: (1) determining the division of property; (2) failing to award the defendant alimony; (3) failing to award attorney's fees to the defendant; and (4) denying the motions to reargue, for an evidentiary hearing, and for disqualification of the trial judge. Because of its decision on the motion for disqualification, the Appellate Court found it unnecessary to decide the remaining issues.

[2] The law firm of Trantolo and Trantolo had represented the administratrix initially.

[3] The *Nesko* case was brought by the administratrix of the estate of a boy killed in a school bus accident. Attorney C. Michael Budlong represented

relationship with the judge's law firm existed until the judge went on the bench on November 6, 1985.

After his appointment to the bench, the judge's successor law firm continued to represent the *Nesko* plaintiff. Eventually the *Nesko* case was resolved by a stipulated judgment rendered by the Superior Court on November 19, 1986. A subsequent dispute over legal fees in the case resulted in a separate action in the Superior Court and the filing of an objection in the Probate Court to the distribution of funds derived from the stipulated judgment. Both of these matters were still pending at the time of the decision in the *Bonelli* dissolution action, but the judge was not involved in either matter.[4] The only financial association he retained with the successor law firm was a stock redemption agreement, which was not affected in any way by the *Nesko* case.

A careful examination of the record reveals that the judge's involvement in the *Nesko* matter while a practicing attorney was very limited after the initial interview and correspondence of June 10, 1982. He never personally entered an appearance or signed any of the pleadings or other documents in the case. The judge stated unequivocally and accurately that his participation in the *Nesko* case had been minimal. His name does not appear in the *Nesko* file except on two notices of depositions that were addressed to him personally. There is no evidence that the judge ever attended either of the depositions, and indeed the record as a whole indicates that he took no active role in the case after

the spouse of the administratrix in a pending dissolution action, and the record indicates that his appearance in the *Nesko* case was for the purpose of representing the interests of the administratrix' spouse.

[4] The dispute over legal fees arose between the law firm of Trantolo and Trantolo, the plaintiff's attorney C. Michael Budlong, and the trial judge's successor firm. Trantolo and Trantolo corresponded directly with Judge Kaplan regarding the fee dispute but he informed them that he was not involved and there was no further correspondence on the matter.

the initial interview. There is, for example, no indication of any correspondence or personal meetings between the judge and the plaintiff's attorney concerning the *Nesko* file during the existence of the cocounsel relationship or after its termination.

The defendant does not claim, nor is there any other indication, that the judge had a financial relationship with the plaintiff's attorney or that the judge retained a financial interest in the outcome of the wrongful death action. In addition to the absence of any financial relationship, the record indicates that there was no business, social or any other relationship between the judge and the plaintiff's attorney other than the prior cocounsel association.

The undisputed facts thus disclose a formal cocounsel relationship between the judge and the plaintiff's attorney in an unrelated action that ended fourteen months prior to any involvement of the judge in the instant case. The issue before the court is whether these facts required disqualification of the trial judge.

The Appellate Court determined that this case is governed by Canon 3 C (1) of the Code of Judicial Conduct,[5] which provides: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . . " The standard provided in Canon 3 C (1) was more fully developed by this court in *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 744–46, 444 A.2d 196 (1982): "The standard to be employed is an objective one . . . . 'Any conduct that would lead a reasonable [person] *knowing all the circumstances* to the conclusion that the judge's "impartiality might reasonably be questioned" is a basis for the judge's disqualification. Thus, an

---

[5] The facts of this case do not bring it within the scope of General Statutes § 51-39, which relates to the disqualification of judges "by relationship or interest."

impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard . . . . ' Thode, Reporter's Notes to Code of Judicial Conduct (1973), pp. 60–61." (Emphasis added.)

Canon 3 C was adopted by the Superior Court in 1974, and it reflects the purpose of avoiding even the appearance of impropriety in the realm of judicial conduct. We do not question that the prevention of the appearance of impropriety is of vital importance in preserving confidence in the judiciary and the judicial process. *Cameron* v. *Cameron,* 187 Conn. 163, 170, 444 A.2d 915 (1982); *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 29, 441 A.2d 49 (1981); *Dubaldo* v. *Dubaldo,* 14 Conn. App. 645, 650, 542 A.2d 750 (1988). But the application of the facts in this case to the standard set by Canon 3 C leads us to a different conclusion from that reached by the Appellate Court. In our judgment, a reasonable person knowing all the facts would conclude that the trial judge's prior association with the plaintiff's attorney did not jeopardize his impartiality.

The decision of the Appellate Court does not identify the specific factors that it considered in reaching its conclusion. In order to assess disqualification in the context of a prior cocounsel relationship, the important factors to be considered are the closeness of the cocounsel relationship, the possibility of any financial benefit to the judge resulting from the cocounsel association, the existence of any social or personal relationship between the trial judge and counsel, and the amount of time that has elapsed after termination of the cocounsel relationship. Examination of the "totality of the circumstances" in this case demonstrates that this prior cocounsel relationship was not a very close association. The trial judge's personal involvement in the *Nesko* case prior to his appointment to the bench was limited to

the initial interview and correspondence concerning the case. It is evident from the record that other members of the judge's firm actually managed the *Nesko* file,[6] and there is no evidence of any personal contact with the plaintiff's attorney regarding the *Nesko* case. The cocounsel relationship was a nominal one at best, since Judge Kaplan's former law firm and the plaintiff's counsel were representing the interests of different clients.[7]

There is nothing about the cocounsel relationship itself that would lead a reasonable person to question the judge's impartiality. A review of federal and state case law indicates that much closer prebench contacts between judge and counsel have been rejected as grounds for disqualification under Canon 3 C. Disqualification is not necessarily required even when his former law partner appears before a trial judge; *Alvarado Morales* v. *Digital Equipment Corporation,* 699 F. Sup. 16, 18 (D. Puerto Rico 1988); *Bumpus* v. *Uniroyal Tire Co. Division of Uniroyal, Inc.,* 385 F. Sup. 711, 714 (E.D. Pa. 1974); nor is it required when counsel is a former law clerk. *Patzner* v. *Burkett,* 779 F.2d 1363, 1372 (8th Cir. 1985); *Smith* v. *Pepsico, Inc.,* 434 F. Sup. 524, 526 (S.D. Fla. 1977). A cocounsel relationship, in and of itself, is insufficient to require disqualification of a judge.

We acknowledge that a prior cocounsel relationship accompanied by an additional association, such as a close personal or social involvement, or an ongoing financial relationship, may cause a reasonable person to question a judge's impartiality. See *Potashnick* v.

---

[6] The Appellate Court noted that, at one point in the hearings on the motion to disqualify, the judge stated " 'I handled that file for [the *Nesko* plaintiff]' "; *Bonelli* v. *Bonelli,* 18 Conn. App. 207, 209, 557 A.2d 559 (1989); however, it is clear from the context of that statement that the judge was referring to the initial consultation with the *Nesko* plaintiff.

[7] See footnote 3, supra.

*Port City Construction Co.,* 609 F.2d 1101, 1114–15 (5th Cir.), cert. denied, 449 U.S. 820, 101 S. Ct. 78, 66 L. Ed. 2d 22 (1980) (holding that a judge with an extensive business and professional relationship with counsel should have disqualified himself). We also recognize that an extensive cocounsel association that involves significant contact between judge and counsel may implicate Canon 3 C (1). The record in this case, however, reveals no evidence that would cause a reasonable person to question the impartiality of the judge.

One of the considerations for a court in examining the prior cocounsel association of a judge is the amount of time that has expired since the termination of the cocounsel relationship. The federal courts have informally adopted a policy suggesting that judges should recuse themselves from cases involving former members of the judge's firm or former law clerks for a period of one or two years after the prior association has ended. *United States* v. *Hollister,* 746 F.2d 420, 426 (8th Cir. 1984) (suggesting a one year recusal period before a judge's former law clerk may appear as counsel before the judge); *Smith* v. *Pepsico, Inc.,* supra (noting a one year recusal period in the Southern District of Florida and a two year period for the Eastern District of Pennsylvania in cases involving members of a judge's former firm). The association of a former law clerk or member of a judge's former firm is inherently a much closer relationship than that of cocounsel. In our view fourteen months is clearly a sufficient time period to attenuate any possible impropriety deriving from the cocounsel relationship in this case.

Any decision regarding disqualification of a judge for prior contact with an attorney must be made with the understanding that judges often come to the bench after having had extensive contacts with the community and the legal profession. See *Margoles* v. *Johns,* 660 F.2d 291, 301 (7th Cir. 1981), cert. denied, 455 U.S.

909, 102 S. Ct. 1256, 71 L. Ed. 2d 447 (1982); *State* v. *Romano,* 456 A.2d 746, 753 (R.I. 1983). The standard for disqualification must furthermore take into account the realities of modern litigation, which can create many cocounsel relationships in a single case. A judge who arrives on the bench after years as a practicing attorney may have had countless cocounsel relationships. To require disqualification for a prior cocounsel association that is minimal and does not include a present financial interest or any other business or social relationship would place a burden on the judicial system that is in our opinion without justification.

The legislative history of 28 U.S.C. § 455, the federal statute that was patterned after Canon 3 C, provides that "while the proposed legislation would adopt an objective test, it is not designed to alter the standard of appellate review on disqualification issues. The issue of disqualification is a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion." 13061-9 House Reports, 93d Cong., 2d Sess., No. 93-11, 453, p. 5. We are persuaded that Judge Kaplan did not abuse his discretion in this case. A trial judge is not required to disqualify himself when there is insufficient cause to do so.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the merits of the remaining issues raised by the defendant's appeal.

In this opinion the other justices concurred.