******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARGARET STEFANONI *v.* DARIEN
LITTLE LEAGUE, INC.
(AC 36927)

Gruendel, Mullins and Pellegrino, Js.

*Argued May 14—officially released October 13, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Taggart D. Adams, judge
trial referee.)

*Margaret Stefanoni*, self-represented, the appellant
(plaintiff).

*Michelle M. Arbitrio*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The self-represented plaintiff, Margaret Stefanoni, appeals from the judgment of the trial court denying her request for judicial recusal. On appeal, she challenges the propriety of that determination. We affirm the judgment of the trial court.

The relevant facts largely are undisputed. The defendant, Darien Little League, Inc., provides youth baseball programs in Darien. The plaintiff is an affordable housing developer and a resident of Darien. In August, 2010, her son registered for the highest division in the defendant's fall program. The defendant subsequently reassigned her son to an intermediate division comprised of players at his grade level. On September 16, 2010, the Darien Times[1] published an article on an investigation by the Department of Justice into Darien's zoning and land use practices. The article noted that the plaintiff and her husband "have accused the town of retaliation for their involvement in the town's affordable housing development," and contained several quotes from the plaintiff. It stated in relevant part: "[The plaintiff] told the Darien Times there are 'definitely repercussions' for them as a result of being affordable housing developers, targeting their son. 'This is a small town and people either live near one of our affordable housing proposals or know someone who does,' she said. 'My husband has skin thicker than a rhinoceros, but everyone knows that he has a soft spot for his kids, so the only way the head of [the defendant] could hurt him is by demoralizing my little boy, and that is unforgivable,' she said. [The plaintiff] said her son was the only child affected by a sudden policy change that forced him to move two levels down in the league . . . . She said it is 'impossible to say it is not personal when he was the only boy out of several hundred affected by a sudden and unprecedented policy change that recently forced him to play with boys from two leagues below his.' " The plaintiff further stated that the defendant "made its own rules, and the decision was secretive, unilateral, and ridiculously reminiscent of how [First Selectman] Dave Campbell runs this town . . . . She added that 'something is rotten in Darien' and said she was glad the Department of Justice is starting to keep an eye on the town."

In response, the defendant's board of directors sent a letter to the editor of the Darien Times, published on September 23, 2010, which stated that the plaintiff's allegations were "demonstrably false." That letter also stated that the alleged connection between the plaintiff's affordable housing activities and the placement of her son in an intermediate division was a "half-baked conspiracy theory . . . ." In addition, the defendant posted a message on its website, which it forwarded to parents of its participants via e-mail. In that message, the defendant's board of directors explained its policy

on player assignments in the fall program and rejected the plaintiff's allegation of impropriety as "categorically false . . . ."[2]

Approximately five months later, the plaintiff brought a defamation action against the defendant. Her operative complaint contained three counts pertaining to statements published by the defendant in its letter to the editor, its e-mail to parents, and its website message, respectively. The prayer for relief sought nominal damages and a retraction of the allegedly defamatory statements. In its answer, the defendant denied the substance of the plaintiff's allegations. The defendant also pleaded two special defenses, asserting that the allegedly defamatory statements (1) were protected by a qualified privilege and (2) were true or substantially true.

The matter proceeded to a court trial on January 14, 2014, nearly three years after the commencement of this action. At its outset, the plaintiff offered her own testimony in narrative form. Early in that testimony, the plaintiff described a parcel of land owned by "a longtime Darien Little League board member [who] was not a board member" at the time that the allegedly defamatory statements were published. When the plaintiff then identified that property owner as "Mr. Mark Gregory," the court, *Hon. Taggart D. Adams*, judge trial referee, stated, "All right. I need to take a break here. . . . Mark Gregory was a lawyer who worked with me and for me for a number of years at a law firm in Stamford. I left that law firm fourteen or fifteen years ago. He became a partner in that firm . . . after I left, much to my delight. He has subsequently left that firm as well. I consider him to be a good friend of mine as well as a longtime working associate. . . . [I]n fact, I had lunch with him and another attorney . . . a couple of weeks before Christmas, sometime in December. And I have recused myself from a case . . . in which [Gregory] was representing a client, which was initially assigned to me to try. I am considering recusing myself from this case if [Gregory's] involvement is significant in any fashion whatsoever. I don't want to recuse myself because we've done a lot of work here this morning. But I would be interested, what I'm going to do is take a recess now. . . . I'd like the parties and counsel to consider whether I should recuse myself. I'm considering it. And that may help me in my consideration or it may not. But I was not aware that [Gregory] was involved in this case whatsoever."

Following that recess, Judge Adams offered the parties an opportunity to be heard on the recusal issue. The plaintiff stated, "I feel like you do have to. I would like you to recuse yourself." When Judge Adams asked the plaintiff if Gregory "played any role" in the controversy presently before the court, the plaintiff acknowledged, "I don't know if he . . . actively did . . . ." She

then expressed her concern that "members of the community empathized with his position, and one of them was also involved [with the defendant]." The defendant's attorney also addressed the recusal issue, emphasizing that "until today . . . [Gregory] had not been mentioned in any pleading. He had not been mentioned in any motion or mentioned in any briefing, nor had he been mentioned in any documents exchanged on the topic . . . ."

After hearing from the parties, Judge Adams declined to recuse himself, stating in relevant part: "This is the first time I realized it, that there was any connection whatsoever with this case and Mr. Gregory. My understanding at this point is that, as [the plaintiff] contends, I think she does, that it was her proposed [affordable housing] project near the Gregory residence that she thinks led to the . . . purportedly poor treatment of their son in the fall Little League. I don't see how that has that much to do with the defamation issue. . . . I'm not going to recuse myself from this case. . . . I don't think that Mr. Gregory's actions are an issue in this case. And I don't think he played any role in the case that's in front of me. Does he have a connection to Little League? Apparently so. . . . Does he have a connection with the [plaintiff's] proposed projects? Apparently so. Does he have a connection with the claim of defamation here? I don't think so."

The trial proceeded over the course of two days. In a thorough and well reasoned memorandum of decision, Judge Adams found that the plaintiff had not "met her burden of proving that the actions of [the defendant] were directed personally at her and her husband as a result of their affordable housing activity. From the outset, the plaintiff was able to offer little, if any, support for this allegation that appeared in the [Darien Times article] other than pure speculation. . . . [The] evidence does not demonstrate that [the defendant's] actions were motivated by retaliation, and the plaintiff offered little to rebut the consistent and credible evidence that [the defendant's] assignments for fall baseball in 2010 were not retaliatory." (Citation omitted.) To the contrary, the court credited the "considerable evidence" presented by the defendant that its statements in the letter to the editor, its e-mail to parents, and its website message "were in fact true or substantially true." In particular, the court expressly found that the defendant's "letter describing the plaintiff's statements about retribution to be substantially true and not defamatory. . . . [T]he plaintiff has not proven . . . that [the defendant's] statement in its [letter to the editor] that [the plaintiff's] quotes were 'demonstrably false' itself was false. Other than speculation, there is no support in the record that [the defendant's] assignment of the plaintiff's son was an act of retaliation against the [plaintiff]." The court also found that "the evidence shows clearly that the plaintiff's son was not the only

participant affected" by the assignment of players in the fall program. In addition, the court found that the defendant's "use of the phrase 'half-baked conspiracy theory' is protected by the privilege of fair comment." The court thus concluded that "the plaintiff has not met her burden of proof that the three instances of alleged libel . . . were defamatory, either because they were substantially true or represented fair comment." As a final matter, the court concluded that the defendant also "has proven its special defense of qualified privilege by a preponderance of the evidence." Accordingly, the court dismissed the plaintiff's complaint.

Significantly, the plaintiff in this appeal does not challenge the propriety of those legal conclusions or the factual findings made in support thereof. Rather, her sole claim is that Judge Adams violated rule 2.11 (a) of the Code of Judicial Conduct by failing to recuse himself at trial when the plaintiff in her testimony first raised Gregory's name.

"A trial court's ruling on a motion for disqualification is reviewed for abuse of discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *In re Christopher C.*, 134 Conn. App. 464, 471–72, 39 A.3d 1122 (2012).

"Pursuant to our rules of practice; see Practice Book § 1-22; a judge should disqualify himself from acting in a matter if it is required by rule 2.11 of the Code of Judicial Conduct, which provides in relevant part that '[a] judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned including, but not limited to, the following circumstances . . . [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.' Code of Judicial Conduct 2.11 (a) (1)." *State* v. *Rizzo*, 303 Conn. 71, 118, 31 A.3d 1094 (2011), cert. denied,     U.S.    , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012). "In applying this rule, [t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially

. . . and that they are able to put aside personal impressions regarding a party . . . the burden rests with the party urging disqualification to show that it is warranted."[3] (Citations omitted; internal quotation marks omitted.) Id., 118–19.

We conclude that the plaintiff has not met that burden. Gregory was not a party to this action and did not serve as counsel to either party. Gregory further was not a witness at trial,[4] nor was he the subject of the many subpoenas issued by the plaintiff.[5] Perhaps most significantly, there was no allegation in the pleadings, and no evidence adduced at trial, that Gregory was involved in the publication of the allegedly defamatory statements by the defendant. The plaintiff herself informed the court that she had no knowledge as to whether Gregory was so involved; rather, she simply was "troubled" that some members of the community, including one associated with the defendant, allegedly "empathized with" Gregory's opposition to her affordable housing proposal.[6] We therefore are confronted with a claim of impartiality stemming from a judge's relationship with a person tangential to the material issues to be decided by the court.

It is undisputed that Gregory worked with Judge Adams at a law firm "fourteen or fifteen years ago." As our Supreme Court has noted, "[d]isqualification is not necessarily required even when his former law partner appears before a trial judge . . . ." (Citations omitted.) *Bonelli* v. *Bonelli*, 214 Conn. 14, 20, 570 A.2d 189 (1990). In *Bonelli*, the defendant moved to recuse a trial judge on the ground that he had served as cocounsel to the plaintiff's attorney in a wrongful death action "until his appointment to the bench" approximately fourteen months prior to presiding over the defendant's trial. Id., 15. In affirming that trial judge's refusal to recuse himself from that case, the Supreme Court emphasized that "[a]ny decision regarding disqualification of a judge for prior contact with an attorney must be made with the understanding that judges often come to the bench after having had extensive contacts with the community and the legal profession." Id., 21. The court further explained that "[o]ne of the considerations for a court in examining the prior cocounsel association of a judge is the amount of time that has expired since the termination of the cocounsel relationship. . . . In our view fourteen months is clearly a sufficient time period to attenuate any possible impropriety deriving from the cocounsel relationship in this case." Id. If fourteen months is a sufficient period to alleviate any potential impartiality stemming from a former cocounsel relationship, certainly fourteen years is sufficient to do so with respect to a former associate at a law firm. Nevertheless, Judge Adams did indicate that he recently had lunch with Gregory, whom he described as a "good friend . . . ." We therefore must consider additional factors to determine whether a reasonable person

would question the judge's impartiality.

The conduct of the trial judge is an important consideration in evaluating his impartiality. When Gregory's name first was raised in this litigation during the plaintiff's testimony at trial, Judge Adams immediately halted the proceeding to disclose his relationship with Gregory, thereby alerting the parties to a potential recusal issue. See *Joyner* v. *Commissioner of Correction*, 55 Conn. App. 602, 613, 740 A.2d 424 (1999) (trial judge's disclosure to parties of possible conflict a factor on which this court relied in concluding that motion to recuse properly denied). Judge Adams then recessed the proceedings to contemplate whether to recuse himself and permitted both parties an opportunity to be heard thereon.

Furthermore, after declining to recuse himself, Judge Adams nevertheless provided the plaintiff some latitude with respect to Gregory's alleged involvement in the case by permitting her to introduce what he considered to be nonrelevant evidence. See *Perlmutter* v. *Johnson*, 6 Conn. App. 292, 295, 505 A.2d 13 ("the trial court admirably demonstrated its impartiality in permitting [the defendant], as a pro se litigant, a broad latitude in trying his case"), cert. denied, 200 Conn. 801, 509 A.2d 517 (1986), cert. denied, 479 U.S. 1035, 107 S. Ct. 886, 93 L. Ed. 2d 839 (1987). Although the plaintiff previously had represented to the court that she was "definitely not" getting into a discussion of affordable housing in Darien, she thereafter attempted to admit into evidence two exhibits regarding Gregory's displeasure with one of her affordable housing proposals. The defendant's counsel objected on the ground that the exhibits "involve activity on property. They do not mention the [defendant]. They have nothing to do with the placement of a kid in a division. They have nothing to do with the organization of fall ball league or anything of that sort." Although the court sustained that objection, in doing so, it noted that the plaintiff had "testified and there's been no objection that Mr. Gregory was not pleased with your plans. That's the point, isn't it?" The plaintiff agreed and replied, "Yes, Your Honor." Furthermore, the plaintiff later questioned her husband, who also testified as a witness at trial, as to whether he ever had a conversation with Gregory about their affordable housing proposal. The defendant's counsel immediately objected on relevancy grounds. The court overruled that objection, stating: "I would normally sustain that objection, but since we've had this situation with my relationship with Mr. Gregory talked about today, I'm going to let . . . the question be answered. I doubt that it's relevant." The plaintiff's husband then testified that Gregory knew about their proposal and "was disappointed about the prospect of there being senior affordable housing eventually built there." Judge Adams' willingness to afford the plaintiff that degree of latitude informs our analysis of whether a reasonable

person would question his impartiality.

It bears emphasis that this case is not about affordable housing, nor is it "about a system of grown-ups that failed a child," as the plaintiff declared in her opening statement to the court. Rather, this case is about the publication of allegedly defamatory statements by the defendant. In its memorandum of decision, the court specifically found that although the plaintiff attempted to "tie in Mr. Gregory's alleged displeasure" with one of her affordable housing proposals to the defendant's decision to reassign her son to an intermediate division in the fall program, "there simply was no evidentiary foundation for this claim." The record before us substantiates that finding, which the plaintiff does not challenge in this appeal. See *In re Messiah S.*, 138 Conn. App. 606, 628, 53 A.3d 224 (in affirming trial judge's denial of motion to recuse, this court emphasized that there was "nothing in the court's memorandum of decision evidencing bias as the court's findings are amply supported by the evidence"), cert. denied, 307 Conn. 935, 56 A.3d 712 (2012). Gregory was neither a party nor an attorney in this litigation, and he was not a witness at trial. As was the case in *Joyner* v. *Commissioner of Correction*, supra, 55 Conn. App. 612–13, the outcome of the proceeding did not depend on the testimony of Gregory, "who in fact was not a witness at all . . . ." To conclude that Gregory had any involvement in the publication of defamatory statements by the defendant requires resort to "unverified assertions of opinion, speculation and conjecture [which] cannot support a motion to recuse . . . ." *DeMatteo* v. *DeMatteo*, 21 Conn. App. 582, 591, 575 A.2d 243, cert. denied, 216 Conn. 802, 577 A.2d 715 (1990); see also *Tracey* v. *Tracey*, 97 Conn. App. 278, 284, 903 A.2d 679 (2006) ("speculation is insufficient to establish an appearance of impropriety").

In our view, a reasonable person knowing all the facts would not conclude that Judge Adams' relationship with Gregory compromised his impartiality. "A trial judge is not required to disqualify himself when there is insufficient cause to do so." *Bonelli* v. *Bonelli*, supra, 214 Conn. 22. This is such a case. Viewing the totality of the circumstances and mindful that every reasonable presumption should be given in favor of the correctness of the court's ruling, we cannot say that the trial judge abused his discretion in denying the plaintiff's request for recusal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The Darien Times is a local newspaper. *State* v. *Nowacki*, 155 Conn. App. 758, 764, 111 A.3d 911 (2015).

[2] The message stated: "In its September 16, 2010 issue, The Darien Times published a story ('Investigating town's zoning regulations') which contained an allegation by [the plaintiff] against [the defendant] that 'her son was the only child affected by a sudden policy change that forced him to move two levels down in the league.' This statement is categorically false, and we

wanted to use this opportunity to explain our policy for assigning players to leagues.

"For [our] spring [program], players are placed in leagues based on age and ability level. In order to fairly determine a child's level of play, the league undertakes an evaluation process that involves several facility rentals and numerous hours of volunteers' time. As this lengthy process is not warranted for our shorter and more informal fall program, league assignments for fall are done strictly by grade. First and second graders play in the beginner division, third and fourth graders play in the middle division, and fifth through seventh graders play in the upper division.

"Prior to the 2010 fall season, [the defendant] received a small number of requests from parents who wanted their child to be placed in a division older than that warranted by the player's grade. In order to treat all players fairly and consistently, these requests were denied. One family, the [plaintiff's], subsequently complained to Little League's national headquarters. Little League referred the matter back to our District, which ultimately left the decision to [the defendant]. After additional discussion, [the defendant] affirmed the policy of not allowing any player in the fall program to play up to an older division.

"The [defendant] takes great care in providing a fun, safe, and fair experience for each player in the program. We are disappointed that The Darien Times chose to print [the plaintiff's] allegation without first determining the facts of the matter."

[3] "It is axiomatic that the burden of establishing a record that a judicial impropriety has occurred which demonstrates or gives the appearance of bias or partiality so as to require recusal rests with the party who claims the occurrence of such an impropriety." *State* v. *Santangelo*, 205 Conn. 578, 584, 534 A.2d 1175 (1987); accord *Tracey* v. *Tracey*, 97 Conn. App. 278, 285, 903 A.2d 679 (2006) ("it is the moving party's burden to prove that the conduct in question gives rise to a reasonable appearance of impropriety"). The burden thus rests with the plaintiff in this appeal to demonstrate that the trial judge improperly denied her recusal request.

[4] At oral argument before this court, the plaintiff was asked whether Gregory was included on her witness list at trial. He was not, she replied, "because he was not an active participant" in the dispute between the parties.

[5] Although self-represented, the plaintiff is an experienced litigant before the courts of this state. See, e.g., *Stefanoni* v. *Duncan*, 282 Conn. 686, 923 A.2d 737 (2007); *Stefanoni* v. *Dept. of Economic & Community Development*, 142 Conn. App. 300, 70 A.3d 61, cert. denied, 309 Conn. 907, 68 A.3d 661 (2013); *Stefanoni* v. *Planning & Zoning Commission*, Superior Court, judicial district of New Britain, Docket No. CV-11-5015369S (October 16, 2012). Prior to trial, she filed multiple applications for the issuance of subpoenas by a self-represented party pursuant to Practice Book § 7-19, which the court granted. As a result, Jerry DiMeglio, Mark Adiletta, David Williams, Anthony Farren, Todd Boe, and Santo Golino were commanded to appear at trial.

[6] In her principal appellate brief, the plaintiff concedes that Gregory "did not write the defamatory statements nor was he on the [defendant's] board of directors when the plaintiff's son was demoted."