## STATE OF CONNECTICUT *v.* BILLY G. HUNT
### (AC 21495)

Flynn, Bishop and McDonald, Js.

Argued May 29—officially released October 15, 2002

*Gerald E. Bodell*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Frank S. Maco*, state's attorney, and *David Shepack*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Billy G. Hunt, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sale of a narcotic substance in violation of General Statutes § 21a-278 (b)[1] and two counts of sale of a narcotic substance within 1500 feet of a private elementary school in violation of General Statutes § 21a-278a (b).[2] On appeal, the defendant argues that (1) the court improperly failed to grant his

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . sells . . .any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section . . . 21a-278 by . . . selling . . . any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary . . . school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section . . . 21a-278. . . ."

motion for the disclosure of the identity of a confidential informant and (2) there was insufficient evidence to sustain his conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 27, 1999, Detective Brian Boutote, working undercover with the Waterbury regional narcotics task force, entered the Franklin Street Cafe in Torrington, accompanied by a confidential informant, at approximately 10 p.m.. Upon entering the bar, which was located within 1500 feet of St. Peter's Elementary School, Boutote purchased two beers and sat down at one of the tables with the informant. After about ten to fifteen minutes, a man and a woman came to Boutote's table and began a conversation with the informant. Boutote sat facing a pool table and could observe the defendant. The informant's back was toward that area of the bar. After Boutote had observed a series of hand to hand drug transactions between the defendant and others at the bar, Boutote left the table and approached the defendant. Boutote showed the defendant a $20 bill and asked, "Can I get a twenty?" whereupon the defendant gave Boutote a small plastic bag with a Hershey kiss design that contained a white powdery substance.

Upon leaving the bar, Boutote met with Officer Jennifer Hayes of the Torrington police department at a prearranged location, where Boutote reported that he made the purchase from the defendant and turned the bag over to Hayes. A subsequent laboratory test revealed that the substance was freebase cocaine.

On June 3, 1999, Boutote again entered the Franklin Street Cafe at about 10 p.m. for the purpose of making a second narcotics purchase from the defendant. The informant did not accompany him on that occasion. Upon entering, Boutote saw the defendant sitting at the

end of the bar and approached him. Boutote then gave a $20 bill to the defendant. The defendant, in turn, reached into a bag of Doritos and handed Boutote a small clear plastic bag with a Hershey kiss on it that contained a white powdery substance. The defendant then stood up and looked out a window and noticed the police outside. After telling Boutote that the police were outside, the defendant placed his bag of Doritos behind the bar and walked to the other side of the establishment. Boutote ordered the defendant a drink and then left the bar to meet with Hayes. Boutote turned the bag over to Hayes and informed her that he had purchased it from the defendant. The substance subsequently was determined to be freebase cocaine.

## I

The defendant claims that the court improperly failed to grant his motion for an order directing the disclosure of the identity of the confidential informant with Boutote on May 27, 1999. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. Prior to trial, the defendant filed a motion seeking an order to have the state identify the confidential informant who had accompanied Boutote.

On the morning that the evidence was to start, the court held a hearing on the defendant's motion. The sole witness at the hearing was Boutote. Boutote testified that on May 27, 1999, he entered the Franklin Street Cafe with an informant who had been promised anonymity. The purpose of using an informant in the Franklin Street Cafe operation was so that the undercover officer would not have to enter the bar by himself. Boutote testified that the informant was only "a tool, a prop." Upon entering the bar, Boutote ordered two beers and sat at a table with the informant. After several minutes, two individuals approached Boutote's table

and sat down, engaging the informant in conversation. While the informant remained at the table with his back toward the defendant, who was near the pool table, Boutote walked over to the defendant, whom Boutote had been watching, gave him a $20 bill and, in turn, received a clear plastic bag containing a white powdery substance. Boutote testified that he had observed that the informant did not see him approach the defendant and that the informant was not a witness to the transaction. He testified that the informant, whom he referred to as "they," was "surprised" that Boutote had made the drug buy because the informant was not aware of it. The informant told Boutote that "they did not see a transaction."

In denying the defendant's motion, the court found as follows: "The court finds the officer who testified, the detective, credible, believes the [confidential informant's] function there that evening was to be a tool or a prop and that based upon our law . . . and on the basis of these facts, the informant's involvement in the transaction did not rise to the level of participation that would require disclosure of his or her identity. It is the defendant's burden to show that the balance of the evidence falls in favor of disclosure. And in this case, the court finds that the defendant did not meet that particular burden. All the court heard was mere speculation that the informant's information would be helpful to the defense, and, under our law, that is not sufficient to mandate disclosure. Disclosure should be given where the informant is a key witness or participant in the crime here. This [confidential informant] was neither. Based upon those reasons, the motion is denied."

"In *Roviaro* v. *United States* [353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)], the United States Supreme Court had occasion to define the nature and scope of the informant's privilege. What is usually referred to as

the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons *who furnish information of violations of law to officers charged with enforcement of that law.* . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens *to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.* . . .

"*Roviaro* established a test for assessing challenges to the applicability of the informant's privilege. This test involves the balancing of two competing interests: (1) the preservation of the underlying purpose of the privilege; and (2) the fundamental requirements of fairness. . . . The underlying purpose of the privilege is to protect the public interest in the flow of information to law enforcement officials. The fundamental requirements of fairness comprise the defendant's right to a fair trial, including the right to obtain information relevant and helpful to a defense. . . . Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Jackson*, 239 Conn. 629, 632–33, 687 A.2d 485 (1997).

"As a threshold matter, we set forth the standard by which an appellate court may review the propriety of a trial court's decision to order disclosure. It is a basic tenet of our jurisprudence that we afford deference to the trial court and assess the trial court's conclusions pursuant to an abuse of discretion standard. . . . [T]he determination of whether an informer's identity shall

be revealed is reviewed as a matter involving the exercise of discretion by the court. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 254 Conn. 659, 665, 759 A.2d 79 (2000).

"The privilege to maintain the secrecy of the informant's identity is part of a complex privilege relating to the needs of government. Four general principles should be considered in applying the privilege: (1) The communications must originate in a confidence that they will not be disclosed . . . (2) [t]his element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties . . . (3) [t]he relation must be one which in the opinion of the community ought to be sedulously fostered [and] (4) [t]he injury that would inure to the relation by the disclosure . . . must be greater than the benefit thereby gained [by disclosure]. . . . All four are clearly present in the case of the informant-government relationship." (Citation omitted; internal quotation marks omitted.) *State* v. *Jackson*, supra, 239 Conn. 633.

"A genuine privilege . . . must be recognized for the *identity of persons supplying the government with information concerning the commission of crimes.* Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon

professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship. That the government has this privilege is well established, and its soundness cannot be questioned." (Emphasis in original.) 8 J. Wigmore, Evidence (4th Ed. 1961) § 2374 (f), pp. 761–62.

"Once the state has invoked the privilege, it is then the defendant's burden to show that the balance of the evidence falls in favor of disclosure. . . . This burden is met by addressing the two competing interests identified in *Roviaro*. The defendant may show that the informant's role as a police agent has been disclosed to the people likely to retaliate against the informant . . . which he has not done, or he may show that disclosure of the informant's identity is essential to the defense. . . . Disclosure is essential to the defense where nondisclosure could hamper the defendant's right to a fair trial, such as where the informant is a *key witness or participant* in the crime charged, someone whose testimony would be significant in determining guilt or innocence." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Jackson*, supra, 239 Conn. 636–37.

The state introduced evidence, which the court credited, that the informant had been promised anonymity. The defendant argues that the confidential informant was a witness to the events that transpired on May 27, 1999. It is his contention that the informant "had the *potential* to the defense to rebut these charges with *potential* testimony that other people at the Franklin Street Cafe were selling narcotics, that the defendant was not present when the undercover [detective] claims he purchased narcotics from the defendant and/or that the undercover [detective had] purchased narcotics from a third person other than the defendant . . . ."

(Emphasis added.) The defendant contends that the informant's testimony would have supported his defense of mistaken identity. We conclude that the defendant has failed to establish that the confidential informant's testimony would have been essential to his defense.

"Mere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure or an in camera hearing." *State* v. *Richardson*, 204 Conn. 654, 663, 529 A.2d 1236 (1987). "Before a court will compel disclosure, the informant typically must be a participant in the alleged crime or an eyewitness thereto." (Internal quotation marks omitted.) *State* v. *Baker*, 50 Conn. App. 268, 273, 718 A.2d 450, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998). There was no evidence presented to the court to suggest that the confidential informant could provide the evidence that the defendant suggested. The only evidence that the court heard was from Boutote. Boutote testified that the informant was not with him when he approached the defendant to make the drug transaction and that the informant was not aware that the transaction had occurred. When asked by the defendant's counsel if the informant had observed the transaction, Boutote testified: "The informant indicated to me when I went back to the table and I said, 'We're all set,' they [the informant] were surprised that I made a transaction because they [the informant] weren't aware," and, "I know that the informant told me they [the informant] did not see a transaction." Without any evidence to suggest that the confidential informant was a witness to, or a participant in, the transaction, the proposed testimony was based simply on speculation, which is "not sufficient to mandate disclosure." (Internal quotation marks omitted.) Id., 274.

The court's decision rested on the testimony of Boutote, the only witness called to testify at the hearing.

"Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom. . . . As a practical matter, it is inappropriate to assess credibility without having watched a witness testify, because demeanor, conduct and other factors are not fully reflected in the cold, printed record. . . . We, therefore, defer to the trial court's credibility assessments and conclude that there was ample evidence in the record to support the trial court's findings and conclusions." (Citation omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002).

Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion for an order directing the disclosure of the identity of the confidential informant.

## II

The defendant also claims that there was insufficient evidence to sustain his conviction because it was based "solely on the unreported, unreliable, uncorroborated and inconsistent testimony of [Boutote] . . . ." That claim is without merit and requires no further discussion. See *State* v. *Griffin*, 253 Conn. 195, 202, 749 A.2d 1192 (2000); *State* v. *Barnett*, 53 Conn. App. 581, 591–92, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999).

The judgment is affirmed.

In this opinion the other judges concurred.