******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHRISTOPHER
ANTHONY BROWN
(AC 37646)

Lavine, Prescott and Bishop, Js.

*Argued September 22—officially released November 24, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Mullarkey, J.)

*S. Max Simmons*, assigned counsel, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Christopher Anthony Brown, appeals from the judgment of conviction, rendered after a jury trial, of kidnapping in the second degree in violation of General Statutes § 53a-94 (a), and conspiracy to commit kidnapping in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-94 (a). On appeal, the defendant claims that the trial court improperly denied his motion to compel the state to disclose the identity of a confidential informant.[1] We affirm the judgment of the trial court.

At trial, the jury reasonably could have found the following facts. In the early morning of August 4, 2012, the defendant, Christopher Anthony Brown, and two associates abducted the victim, Neville Bar, and brought him to an abandoned building located at 27 Glendale Avenue in Hartford. The defendant and his two associates brought the victim to the basement of 27 Glendale Avenue, tied his wrists and ankles with rope, and threatened him at gunpoint, demanding to know where he kept his supply of marijuana and cash. During the incident, the defendant and his associates stabbed the victim in the leg, hit him in the face with a gun several times, and tortured him by melting a plastic water bottle onto his arms. Before leaving the abandoned basement, the three men took the victim's wallet, which contained $700, tied him with a blanket and a string of Christmas lights, and left him in a bathtub.

On the morning of August 5, 2012, Hartford police officers found the victim in the basement of 27 Glendale Avenue after a neighbor heard him screaming for help. When discovered, the victim was standing in the bathtub, covered in feces and urine, and bound by rope, the string of Christmas lights, and the blanket. He was confused and could only provide disjointed answers to police questioning about the incident and the identity of his assailants. He was then sent to Hartford Hospital for treatment of his wounds and dehydration.

Later that day, Hartford police Detective Richard Salkeld visited the victim at the hospital at which time the victim informed Salkeld that the three assailants were black Jamaican men, one of whom had a "milky-white" left eye.

Following his conversation with the victim, Salkeld spoke to the victim's wife, Margaret Bar, and his niece, Karina Reed. Reed informed Salkeld that she knew a Jamaican male who had recently been evicted from 27 Glendale Avenue, but still used that location as a place to party. She identified the Jamaican male as "Banit" and described him as having only "one eye."

On the basis of the descriptions provided by the victim and Reed, Salkeld searched the Hartford Police database for black Jamaican men associated with 27 Glendale Avenue. That search revealed that the defen-

dant had recently been a resident of 27 Glendale Avenue. A physical description of the defendant in the police booking system indicated that one of the defendant's eyes was "whited over."

In the morning of August 6, 2012, Harford police Detective Renee LeMark-Muir received information from a registered confidential informant[2] who, in the past, had provided the police with credible and reliable information that had led to the identification and location of suspects. The confidential informant told LeMark-Muir that on August 5, 2012, Reed had contacted the informant, asked whether the informant had information regarding the abduction of the victim, and asked whether a Jamaican male known as "Banit" had been involved. The informant told the detective that the informant had then spoken to the defendant, whom the informant knew by his street name "Banit." The informant stated that the defendant had confessed to kidnapping, tying up, beating, and melting a plastic bottle on the victim. The informant also stated that the defendant did not believe that the victim would identify him or his two associates because the victim was afraid of them.

On the basis of the results of the police database search, the descriptions of the assailants from the victim and Reed, and the information from the confidential informant, Hartford police Detective David Ritcher prepared a photographic array consisting of eight photographs, one photograph of the defendant and seven of black men of similar age, appearance, and dress. To further make uniform the appearance of the individuals and eliminate the distinct characteristic of the defendant's eye, Ritcher blacked out the left eye of each individual in the photographic array.

At approximately noon, on August 6, 2012, Ritcher and Salkeld visited the victim in the hospital. They administered the standard witness identification instructions and also gave the victim a form containing the same instructions. The victim initialed each instruction and signed the form, indicating that he understood each instruction. The detectives then presented the photographic array to the victim, who selected the photograph of the defendant, whom he knew as "Banit." He then provided the police with a signed voluntary statement stating "this is the guy who robbed me and kidnapped me."

The defendant was subsequently arrested pursuant to a warrant and charged in a five count long form information with: kidnapping in the second degree in violation of § 53a-94 (a); assault in the second degree in violation of General Statutes § 53a-60 (a) (2); robbery in the first degree in violation of General Statutes § 53a-134 (a) (4); conspiracy to commit kidnapping in the second degree in violation of §§ 53a-48 (a) and 53a-94 (a); and conspiracy to commit assault in the second degree in violation of §§ 53a-48 (a) and 53a-60 (a) (2).

Prior to trial, the defendant moved to compel the disclosure of the confidential informant's identity. In support of his motion for disclosure, the defendant claimed that he had a right to contact and to interview the confidential informant to discover whether the informant was credible and if the informant possessed information helpful to his case. The defendant also expressed suspicion that the confidential informant, police, and victim had fabricated the identification of him in the photographic array. In that regard, the defendant argued, through counsel, that while the victim had been unable to identify his assailants when police rescued him from the basement of 27 Glendale Avenue, "all of a sudden, it looks like [the informant] came along and said whatever [the informant] said and then all of a sudden the [identification] was made." Defense counsel further stated that "we have to jump to the spot where we assume that the police are telling the truth. I hope—we have to assume the police are telling the truth. I hope that they are, they probably are, but I have a shot, I think, to determine whether or not there's any issue with respect to these people in their credibility."

The defendant offered, as an additional reason for his request, his desire to investigate whether the informant possessed any information that was relevant to his defense. Defense counsel stated to the court that "I can't tell if [the informants] were eye witnesses or not. [The state] says they were not, but I read them and I wasn't sure. . . . I don't know, they might be helpful to me. I think I have a right to at least try to talk to them, with any limitations that the court wants to impose, I'm happy to do that, but all this is rumor, upon rumor, upon rumor and it's just hard and it's not fair." Defense counsel concluded by requesting that the court "order the names of the [informants] to be turned over to me so that I can contact them and determine if they can be helpful to the case."

The state objected to the disclosure, arguing that the confidential informant was credible because that person was registered with the Hartford police and had provided reliable and credible information to the police in the past. The state argued, as well, that the informant had no independent information regarding the crime and had only aided the police in the identification of a suspect whom the victim subsequently and independently picked out of a photographic array. Finally, the state argued that the informant likely would be killed if the informant's identity was disclosed. In that regard, the state asserted that although the defendant had confessed details of the crime to the confidential informant, the state said that it would not be calling the informant as a witness at trial in order to protect the informant's identity.

In denying the defendant's motion for disclosure, the

court stated: "[A]s far as the discovery is concerned, there's a purpose to withholding the identity of informants, a public interest purpose, with law enforcement in its course, discretion, and duty to balance and the preservation of the underlying purpose of the privilege with the fundamental requirements of fairness. That's under *State* v. *Jackson*, [239 Conn. 629, 632–33, 687 A.2d 485 (1997).] . . .

"Some of the questions that arise [are] whether or not the information was given in confidence that it would not be disclosed. If that was essential to maintaining the relationship between the parties and the police, then it fosters a good community purpose as far as confidential informants are concerned, and if the disclosure would be harmful to that purpose. Now, if the informant was a witness to or a participant in a crime, it would be required that the[ir] be—the identity be disclosed. . . .

"Now, the defense in this particular motion has the burden to establish, beyond mere speculation, that the information would assist them, and if the only information they have is that the defendant made [an] admission to them, and the state is not offering that, I can't see the necessity for disclosing that, nor do I find the defense has met its burden."

At the subsequent jury trial, the defendant was convicted of kidnapping in the second degree in violation of § 53a-94 (a), and conspiracy to commit kidnapping in the second degree in violation of §§ 53a-48 (a) and 53a-94 (a).[3] The court rendered judgment accordingly and sentenced the defendant to a total effective term of forty years incarceration, execution suspended after twenty-three years, followed by five years conditional discharge. This appeal followed.

On appeal, the defendant claims that the trial court abused its discretion by denying his motion for disclosure of the identity of the confidential informant. Specifically, he argues that the circumstances leading to the identification of the defendant from the photographic array "support a reasonable inference" that the police, victim, and informant fabricated the defendant's involvement in the crime and that the testimony of the informant was necessary to present this defense of mistaken identity to the jury.[4] We are not persuaded.

"As a threshold matter, we set forth the standard by which an appellate court may review the propriety of a trial court's decision to order disclosure. . . . [T]he determination of whether an inform[ant's] identity shall be revealed is reviewed as a matter involving the exercise of discretion by the court. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it

is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 254 Conn. 659, 665–66, 759 A.2d 79 (2000).

Generally, the state is not required to disclose a confidential informant's identity. *Rovario* v. *United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). This is known as the informant's privilege, but is more appropriately described as "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Id.

"*Roviaro* established a test for assessing challenges to the applicability of the informant's privilege. This test involves the balancing of two competing interests: (1) the preservation of the underlying purpose of the privilege; and (2) the fundamental requirements of fairness. . . . The underlying purpose of the privilege is to protect the public interest in the flow of information to law enforcement officials. The fundamental requirements of fairness comprise the defendant's right to a fair trial, including the right to obtain information relevant and helpful to a defense. . . . Whether [disclosure is warranted depends] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors. . . .

"Once the state has invoked the privilege, it is then the defendant's burden to show that the balance of the evidence falls in favor of disclosure. . . . When the defendant demonstrates that disclosure of an inform[ant's] identity, or the contents of his communication, is relevant and helpful to the defense, or is essential to a fair determination of a cause, the government's privilege must yield. . . . Disclosure is essential to the defense where nondisclosure could hamper the defendant's right to a fair trial, such as where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence. . . . Mere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure. . . . [Accordingly, c]ourts generally agree that if the informant provides information to law enforcement officers without any further involvement, disclosure must yield to the protection of the informant." (Citations omitted; internal quotation marks omitted.) *State* v. *Messam*, 108 Conn. App. 744, 748–50, 949 A.2d 1246 (2008).

The rationale for this point of view is that the proposed testimony of an informant, who neither witnessed nor participated in the criminal activity, is typically based on speculation. Because informants who neither witnessed nor participated in the criminal

activity under scrutiny generally do not possess first-hand knowledge of the events, their information typically is not found sufficient to defeat the public's interest in protecting informant anonymity. See id., 752–53 ("[b]ecause the confidential informant was not there to witness the [criminal activity], the court reasonably concluded that the informant would not have had any relevant testimony to offer as to the defendant's defense"); *State* v. *Hunt*, 72 Conn. App. 875, 882–83, 806 A.2d 1084 (concluding that "[w]ithout any evidence to suggest that the confidential informant was a witness to, or a participant in, the transaction, the proposed testimony was based simply on speculation" where defendant "conten[ed] that the informant 'had the *potential* to the defense to rebut [the] charges with *potential* testimony'" [emphasis in original]), cert. denied, 262 Conn. 920, 812 A.2d 863 (2002). Therefore, although not a fixed rule; *Roviaro* v. *United States*, supra, 353 U.S. 62; it is typically not an abuse of discretion for a trial court to deny a defendant's motion for disclosure of an informant's identity if the informant did not witness the crime charged and merely provided police with information that initiated an investigation of the defendant. See *State* v. *Richardson*, 204 Conn. 654, 667–69, 529 A.2d 1236 (1987).

On the basis of our review of the record, we agree that the defendant's proffer in support of his motion for disclosure amounted to mere speculation. The defendant did not describe the substance of the informant's potential testimony and indicated that he had no idea as to whether the informant might have been a witness or participant in the criminal activity. Moreover, the defendant did not even claim that the substance of the informant's potential testimony would be relevant and helpful to his defense, stating only, through counsel: "[T]he prosecutor says [the informant] would be helpful to the state, maybe that's the case, I don't know, they might be helpful to me." Similarly, in his concluding remarks before the court ruled on the disclosure motion, defense counsel asked the court to "order the names of the [informants] be turned over to me so that I can contact them and determine if they can be helpful to the case." Accordingly, the defendant, in pursuit of his motion for disclosure, did not make any proffer, either by eliciting testimony or through oral argument, regarding how his right to a fair trial would be denied if the informant's identity was not made known to him.[5]

The court, in balancing the competing interests of the state and the defendant, concluded that the defendant's unsubstantiated assertion that access to the informant may have aided his case was insufficient to meet his burden necessary to compel the disclosure of the informant's identity. The court explained, "the defense in this particular motion has the burden to establish, beyond mere speculation, that the information would assist them, and if the only information they have is

that the defendant made [an] admission to [the informant], and the state is not offering that [admission], I can't see the necessity for disclosing that, nor do I find the defense has met its burden."

The balance weighs even more heavily toward nondisclosure when, as is the case here, the defendant can neither claim with certainty that the informant was a witness to or participant in the charged crime, nor point to how the informant's testimony at trial would, potentially, be helpful to the defense. See *State* v. *Hunt*, supra, 72 Conn. App. 883. Proffers such as these are too speculative to meet the defendant's burden required to compel disclosure. See *State* v. *West*, 178 Conn. 444, 446, 423 A.2d 117 (1979) (concluding trial court did not abuse its discretion in denying defendant's request to disclose informant's identity where "defendant never advanced a specific reason for needing disclosure of inform[ant's] identity . . . [but] merely asserted that it might be necessary to his defense"). In such cases, the *Roviaro* balancing test will rarely, if ever, favor disclosure.

Finally, the defendant argues that an inconsistency between the victim's initial and subsequent statements to the police regarding his ability to identify his assailants raised a suspicion concerning the relationship between the informant and the development of probable cause. See footnote 4 of this opinion. This claim, however, rested entirely on innuendo propelled only by speculation. Suspicions, without factual support, are too speculative to meet the burden necessary for overcoming the informant's interest in anonymity and the public's interest in effective law enforcement.[6] Indeed, the only factual assertions presented to the court directly opposed the defendant's suppositions. During argument, the state asserted that the informant's information only led to the inclusion of the defendant's photograph in the photographic array and that the victim independently picked the photograph out of the array without coercion from the police. Additionally, the state asserted that Reed's statement to Salkeld independently corroborated the informant's tip. See *State* v. *Richardson*, supra, 204 Conn. 661 (denying disclosure of informant's identity where informant's tip corroborated).

In sum, the record reflects that the defendant's claim for disclosure was based on "[m]ere speculation that the informant's information will be helpful to the defense [which] is not sufficient to mandate disclosure." (Internal quotation marks omitted.) *State* v. *Hunt*, supra, 72 Conn. App. 883. Thus, on the basis of this record, the court could have reasonably reached the conclusion that the defendant did not meet his burden to compel the disclosure of a confidential informant's identity with a bare assertion that an informant's identify might be necessary to his defense without advancing a specific reason for needing disclosure of the informant's iden-

tity. *State* v. *West*, supra, 178 Conn. 446. Accordingly, the trial court did not abuse its discretion and the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant's notice of appeal raised several challenges to his conviction. The only ground that the defendant pursues on appeal, however, is that "the trial court abuse[d] its discretion in denying his motion to disclose the identity of a confidential informant."

[2] Although two confidential informants were involved in the police investigation and the defendant initially sought the disclosure of the identities of both of them prior to trial, the defendant's challenge on appeal is limited to the disclosure of only one of the informants. Our analysis is similarly limited to that specific informant.

[3] The jury also convicted the defendant of conspiracy to commit assault in the second degree in violation of §§ 53a-48 (a) and 53a-60 (a) (2). The court, however, and without objection from the state, dismissed that conviction pursuant to *State* v. *Polanco*, 308 Conn. 242, 248, 61 A.3d 1084 (2013).

[4] At trial, the defendant argued that he required the informant's identity in order to assess the informant's credibility, to determine whether the informant's information was based on hearsay, and to learn whether the informant was biased against him. On appeal, the defendant slightly recasts his prior argument, recalibrating it to assert that the sequence of certain events during the police investigation reasonably could be described as suspicious and that his reasonable suspicion supports the inference that the informant could have offered information to the defense regarding the propriety of the police investigation. Specifically, the defendant identifies inconsistencies between the victim's initial statement to the police when he was rescued from the basement and his subsequent statement given at the hospital. Initially, the victim—who police had "trouble understanding" and who gave "unconnected" responses to police questions—did not give the police any details about the identity of the assailants or the white eye of the defendant, but merely told the police that he could identify his assailants if he saw them again. Later, the victim was able to describe his assailants as black Jamaican men, describe the defendant's unique white eye, pick the defendant out of a photographic array, and identify him as "Banit." Accordingly, the defendant argues that a suspicion that the police, informant, and victim deceitfully collaborated to fabricate the identification of the defendant can be inferred from the inconsistent statements and that questioning of the informant—and not the police or victim—is necessary to quell his suspicion.

[5] Although we note that the defendant did not request an evidentiary hearing in support of his motion for disclosure of the informant's identity, we do not mean to suggest that such a hearing is invariably required in this context. In the case at hand, however, the absence of any evidentiary basis for the motion, combined with defense counsel's inability to articulate any supporting factual basis not resting on mere speculation, left the court with nothing more than mere conjecture from the defendant to balance against the state's interest in nondisclosure.

[6] Alternatively, it could be inferred that the inconsistency between the victim's statements was the product of trauma rather than deceit.